Argued and submitted March 4, affirmed July 10, 2013

In the Matter of R. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

P. D.,
W. D., and S. C.,
*Respondents,*

*v.*

R. D.,
*Appellant.*

Douglas County Circuit Court
0900584;
Petition Number 10JU298;
A151701

307 P3d 487

Megan L. Jacquot argued the cause and filed the brief for appellant.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Erin Galli argued the cause for respondent W. D. With her on the brief was Chilton & Galli, LLC.

Peter Gartlan, Chief Defender, and Shannon Storey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for respondent P. D.

No appearance for respondent S. C.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

This is a juvenile dependency case involving a child who was taken away from mother and father at birth. Child appeals from a permanency judgment, asserting that the juvenile court erred in continuing a plan to return child to mother and father instead of changing the plan to adoption. For the following reasons, we affirm.

Child does not request *de novo* review under ORS 19.415(3)(b). Accordingly, we review the juvenile court's legal conclusions for errors of law and are bound by the court's findings of historical fact if there is any evidence to support them. *State v. S. T. S.*, 236 Or App 646, 655, 238 P3d 53 (2010). Where the court did not make findings on disputed issues of fact, and there is evidence from which those facts could be decided in more than one way, we presume that the court decided them in a manner consistent with its ultimate conclusion. *Id.*

Child was born on December 1, 2009. DHS removed child from her parents the next day. The court took jurisdiction over child and made her a ward by judgment on November 19, 2010, based on the following facts. Mother and father were convicted of third-degree rape in July 2000, in a case involving a minor female. Mother and father were assessed as needing sex offender treatment, but have never successfully completed treatment. Mother was diagnosed with impulse control disorder, paraphilia, alcohol abuse, and "Mild Mental Retardation." In earlier juvenile dependency proceedings from 1997 to 2002, the court determined that mother's three older children were not safe in her care; those children were adopted by a relative. Father admitted that he had mental health and substance abuse issues and stated that he needed the assistance of DHS to form a further bond with child.

The court held a permanency hearing on April 24, 2012, approximately 18 months after the court took jurisdiction over child. At the permanency hearing, DHS and child asked the court to change the plan for child from "return to parent" to "adoption." Mother and father argued that DHS had not made reasonable efforts to make it possible for child

to return home safely and, therefore, the court should not change the plan from reunification to adoption.[1]

The court entered a permanency judgment on May 14, 2012. Instead of checking the boxes for whether mother and father had made sufficient progress toward meeting the expectations set forth in the service agreement, the court wrote, "See attached narrative." The court checked the boxes stating that child "cannot be * * * safely returned" to mother's or father's care. The court attached a 20-page narrative to the permanency judgment.

In the narrative, the court explained that father had appropriately responded to DHS's efforts and had formed an attachment with child. The court also explained that DHS had made reasonable efforts to address father's substance abuse issues and father's response had been reasonable. The court determined that DHS did not make reasonable efforts with regard to the allegation of mother's alcohol abuse.

According to the court, "the overarching issue is whether DHS has made reasonable efforts regarding offering sex offender treatment to" mother and father. The court stated that DHS's efforts in contacting various sex offender treatment providers were reasonable. The court noted that there had been a delay in obtaining the services of a provider for mother's sex offender treatment and that, as a result, mother's treatment did not begin until April 2012. Consequently, by the time of the hearing, mother had participated in only two sessions, and the provider was unable to give an opinion as to whether mother would be a successful candidate for sex offender treatment. The court concluded that DHS's initial efforts were reasonable but that the passage of 16 months between the time jurisdiction was established and when mother first saw her provider, was not reasonable.[2] In the court's view, "the search went on too long, because DHS knew from at least the time jurisdiction attached [that mother] needed a therapist who had skills in the treatment of cognitive impaired, developmentally delayed persons." Thus, the court concluded that DHS had not made reasonable efforts in securing sex offender treatment for mother.

---

[1] Mother and father live together.

[2] A number of potential providers refused to provide treatment to mother.

The court further determined that "further efforts can and will make it possible for the child to safely return home within a reasonable period of time." It ordered parents to participate in services and make progress, and scheduled another permanency hearing for one year later. The court ordered that mother and father continue sex offender treatment for at least that period of time. The court also required father to attend and complete drug and alcohol treatment and stated that mother needed to receive care for her mental health issues. The court observed that, "Thus far, [father] has received and been successful with parent training. [Mother] has received, but has not been successful in the parent training, even though the parent training was a part of DHS' 'reasonable efforts.'" As previously noted, the court concluded that the plan would remain "return to parent" and ordered another permanency hearing for April 23, 2013.

On appeal, child contends that the juvenile court erred in continuing the plan of reunification instead of changing the plan to adoption. Child argues that, based on the evidence at the hearing, mother will never be able to adequately parent child. Accordingly, child asserts, it does not matter whether DHS provided reasonable services with regard to sex offender treatment because, in the end, mother still will not be an adequate parent and child will not be able to safely return home.[3] Mother and father respond that the juvenile court correctly assessed DHS's efforts against the adjudicated bases for jurisdiction and, regardless, any error is harmless because child did not challenge the juvenile court's determination that further efforts can and will make it possible for child to return home. We agree with mother and father.

As a preliminary matter, mother and father assert that child failed to preserve her argument that it does not

---

[3] Child is the only appellant, while DHS, mother, and father each filed responding briefs. However, DHS agrees with child and asserts that the juvenile court should have changed the plan to adoption. DHS makes a number of arguments—*viz.*, that the juvenile court's conclusions were based on unsupported findings of fact and that the juvenile court erred in allowing the parents another year "at least" to make sufficient progress. But DHS did not file a cross-appeal or make its own assignments of error. Accordingly, we do not consider DHS's arguments.

matter whether DHS provided reasonable services with regard to sex offender treatment. Under ORAP 5.45(1), "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court." "Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Mother and father are correct that child did not raise the exact argument she is making on appeal to the juvenile court. However, because child argued that DHS made reasonable efforts and that child would not be able to return home safely within a reasonable time, we conclude that the issue is sufficiently preserved for us to reach the merits on appeal. In addition, neither mother nor father suggests that the record would be different if child had made the argument to the juvenile court.

ORS 419B.476(2)(a) provides that, "[i]f the case plan at the time of the hearing is to reunify the family," at the permanency hearing, the court shall "determine whether the Department of Human Services has made reasonable efforts * * * and whether the parent has made sufficient progress to make it possible for the ward to safely return home."

> "[T]o warrant a change in the permanency plan from reunification to adoption under the circumstances described in ORS 419B.476(2)(a), the court must find that, despite DHS's reasonable efforts to make it possible for the child to return home safely, a parent has not made sufficient progress to enable this to occur."

*State ex rel Dept. of Human Services v. S. L.*, 211 Or App 362, 372, 155 P3d 73 (2007).

As noted, child asserts that it does not matter whether DHS provided reasonable services with regard to sex offender treatment because, based on the evidence at the hearing, mother will never be able to adequately parent child. Child is incorrect in two ways. First, in a permanency hearing, DHS has the burden of proving that (1) DHS made reasonable efforts to make it possible for the child to return

home safely *and* (2) the parent has not made sufficient progress for that to occur. *Id.* If DHS fails to prove both, the court will not change the plan from reunification to adoption. Here, the juvenile court implicitly concluded that DHS's reasonable efforts must include sex offender treatment, and there is evidence in the record to support the court's finding that, because of DHS's failure to secure a provider, mother received no sex offender treatment for 16 months after jurisdiction was established. That finding supports the court's legal conclusion that DHS failed to make reasonable efforts to provide services to mother. Second, in this case, the court did not determine that parents had not made sufficient progress for child to return safely home. The juvenile court did not conclude, as child asserts, that mother could never be an adequate parent. On the contrary, the court explicitly stated that "further efforts can and will make it possible for the child to safely return home within a reasonable period of time," and child does not challenge that determination.[4] Accordingly, we conclude that the juvenile court did not err in continuing the plan of reunification.

Affirmed.

---

[4] Child argues that the court's error was in concluding that DHS did not provide reasonable services. We limit our discussion to the argument child raises and it does not matter if the services were not reasonable because mother will never be able to adequately parent child. We neither consider nor express any opinion on the length of time child has been in foster care or what would be a reasonable amount of time from child's perspective.