Argued and submitted November 5, reversed and remanded December 26, 2019

In the Matter of W. Q.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

V. A. R.,
*Appellant.*

Wallowa County Circuit Court
16JU10116, 17JU09739;
A170264 (Control), A170265

456 P3d 681

Mother appeals permanency judgments changing the permanency plan for her 13-year-old son, W, from reunification to placement with a fit and willing relative. She contends that the juvenile court erred when it determined that the Department of Human Services (DHS) made reasonable efforts to reunify W with mother as required by ORS 419B.476(2)(a) because only five sessions of hands-on parenting training before the permanency hearing did not reasonably allow her the opportunity to demonstrate that she could be a minimally adequate parent for W. DHS argues that its efforts were reasonable and that, in any event, mother's intellectual disability is an insurmountable barrier to reunification. *Held*: DHS's efforts to reunify W with mother were not reasonable because, at the time of the hearing, mother's training had not been going on long enough to allow for a meaningful evaluation of whether mother could become a minimally adequate parent.

Reversed and remanded.

Thomas B. Powers, Judge.

Sarah Peterson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

LAGESEN, P. J.

Reversed and remanded.

## LAGESEN, P. J.

Mother appeals permanency judgments changing the permanency plan for her 13-year-old son, W, from reunification to placement with a fit and willing relative. She contends that the juvenile court erred when it determined that the Department of Human Services made reasonable efforts to reunify W with mother as required by ORS 419B.476 (2)(a). Accepting the juvenile court's supported factual findings and reviewing for legal error, *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 133, 413 P3d 1005 (2018),[1] we conclude that mother is correct. We therefore reverse and remand.

Absent exceptions not applicable here, to change W's permanency plan from reunification to placement with a fit and willing relative under ORS 419B.476, the juvenile court was required to make two predicate determinations: (1) that DHS made "reasonable efforts" to reunify W with mother; and (2) that, notwithstanding those efforts, mother's progress was not sufficient to allow reunification. *L. L. S.*, 290 Or App at 137-38. Here, mother does not dispute that, as of the permanency hearing, her progress was insufficient to permit reunification; the only issue is whether DHS made reasonable efforts toward achieving reunification. "Reasonable efforts" for purposes of ORS 419B.476(2)(a) are "efforts that focus on ameliorating the adjudicated bases for jurisdiction, and that give 'parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents.'" *Id.* (quoting *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 306, 388 P3d 1204 (2017) (second internal quotation marks omitted)). The reasonableness of DHS's efforts depends on the particular circumstances of the case. *S. M. H.*, 283 Or App at 305.

Here, the particular circumstances of the case preclude the conclusion that DHS's efforts to reunify W with mother were reasonable, by and large because those circumstances show that DHS's efforts did not afford mother

---

[1] Neither party has requested *de novo* review, and this does not otherwise appear to be the type of "exceptional" case that would warrant it. *See* ORAP 5.40(8)(c).

a reasonable opportunity to become a minimally adequate parent to W.

The juvenile court took jurisdiction over W as to mother in March 2017 based on mother's hostile relationship with father and her lack of the parenting skills needed to manage W's needs:

> "Mother and Father fight verbally and physically when the child is present. This causes an escalation in the child's destructive and sometimes violent behavior, placing the child and the parents at risk of harm.
>
> "* * * * *
>
> "[W] is a special needs child with multiple issues. Mother lacks the parenting skills to cope with the child's issues and ensure the child's safety."

By the time of the permanency hearing in December 2018, parents had long been separated, and no one contended that their current relationship posed a barrier to reunification. Instead, the focus at the hearing was on DHS's efforts to assist mother in acquiring the parenting skills needed to parent W, and whether those efforts were reasonable, as well as on mother's progress toward becoming a minimally adequate parent. Noting that the case was complicated by, among other things, the facts that both mother and W "have serious developmental disabilities" and that mother has both "cognitive limitations" and "mental health issues that may affect her ability to take advantage of parenting support services," the court cataloged the services provided to mother over the life of the case and, ultimately, concluded that they represented reasonable efforts by DHS. In the juvenile court's view, the services were designed to account for mother's intellectual and developmental limitations and were appropriately evaluated and recalibrated over the life of the case.

On appeal, mother contests that conclusion.[2] Although she does not dispute that DHS provided her with a number of services (services which, mother points out, she

---

[2] Mother also raises several other arguments as to why the permanency judgments should be reversed. Our conclusion that DHS's efforts were not reasonable, and to reverse for that reason, obviates the need to address those arguments.

accepted and actively participated in), she contends that those services did not, in the end, give her a reasonable opportunity to demonstrate that she was capable of becoming a minimally adequate parent. That is because, mother argues, it was determined early in the case—by July 2017—that mother required hands-on, in-person parent training, where the parent trainer worked with mother and W while they were together. Sweet, who conducted a psychological evaluation of mother in July 2017 at DHS's request, advised following that evaluation that mother should have "specialized hands-on training to help her assess and meet [W's] needs," training that "would require a provider who has a very clear understanding of [W's] needs and can work with [mother] and child together."

DHS, nonetheless, did not provide that type of training for most of the life of the case. Instead, it offered parenting training through Skype visits with a provider who, when discharging mother from the program in January 2018, echoed Sweet's recommendations, explaining that mother needed more visitation and "[h]ands on observation and parenting instruction." Not until September 2018 did DHS begin to provide the recommended training, and then only after the juvenile court ordered it to do so in June of that year: "The court finds that 4 hours per month (2 visits twice a month) is not sufficient to attain the goal of the plan. Therefore[,] DHS is ordered to increase the amount of visitation and combine it with parent training in an amount that is optimum to attain the goal of the current plan."

As a result of the delay, mother had had only five sessions of hands-on parenting training by the time of the permanency hearing. This, in mother's view, did not give her the opportunity to become a minimally adequate parent required by ORS 419B.476. She analogizes this case to *Dept. of Human Services v. R. D.*, 257 Or App 427, 307 P3d 487 (2013), a case in which we affirmed the juvenile court's legal conclusion that DHS's reunification efforts were not reasonable. There, we upheld the court's "legal conclusion that DHS failed to make reasonable efforts to provide services to mother," where mother required sex offender treatment to address the basis for jurisdiction but 16 months had elapsed

between the time the court took jurisdiction over the child and the time that such treatment was started shortly before the permanency hearing. *Id.* at 432-33.

Responding to mother's argument, DHS does not appear to argue that its efforts to supply training met the standard articulated in *S. M. H.*[3] DHS acknowledges that in-person parent training was recommended early in the case but that "it took some time to arrange in-person parent training for mother and [W]" in view of the distance between Salem, where W's foster home is located, and Wallowa County, where mother lives.[4] Rather than arguing that its efforts gave mother a reasonable opportunity to demonstrate that she could be a minimally adequate parent for W, DHS argues that we should conclude that its efforts were reasonable because, in its view, mother's intellectual disability so impairs her ability to parent that she will never be able to parent W: "[T]he real barrier to reunification in this case is mother's own intellectual disability, and her resulting inability to understand how to manage [W's] behaviors and meet his significant special needs." DHS argues further that, "despite mother's bond with [W], the parent-training offered by DHS could not assist her in overcoming her own deficits in order to appreciate the level of care [W] requires."

We agree with mother that, under the circumstances of this case, DHS's efforts do not meet the standard articulated in our case law. From June 2017 on, DHS was aware that, given mother's intellectual disability and W's disability and needs, hands-on parenting training was required if mother was to develop the skills needed to parent W with minimal adequacy. Yet, with little in the way of explanation,

---

[3] At oral argument, DHS expressed disagreement with our articulation of the reasonable efforts standard in *S. M. H.*, suggesting that the case was wrongly decided.

[4] Although DHS's brief suggests that it is possible the distance between Wallowa County and Salem contributed to the delay in arranging hands-on parenting, the record discloses that mother "consistently engaged in *** bi-monthly in-person visits with [W] in Salem, Oregon" after W was placed in Salem. The record does not disclose why the hands-on training initiated in September 2018 was not started earlier in connection with those visits, and we do not understand the juvenile court to have made a finding that the distance between Wallow County and Salem was the reason that DHS delayed starting in-person parent training for mother.

DHS did not begin to offer those services until the end of September 2018, which meant that mother had had only five training sessions before the permanency hearing. Similar to the circumstances in *R. D.*, the delay in providing services means that mother was not given a reasonable opportunity to demonstrate that, with those services, she could become a minimally adequate parent. Simply put, as of the time of the hearing, it was too soon to tell if mother, having been provided with the type of parenting training needed in view of her intellectual disability, could develop the skills to parent W.

DHS's argument that mother's intellectual disability is an insurmountable barrier to reunification does not provide a basis for concluding the contrary. That argument is, in effect, that reasonable efforts—that is, efforts that will give mother a reasonable opportunity to demonstrate that she can become a minimally adequate parent—will be futile because of mother's intellectual disability. But, as mother points out, if DHS perceives insurmountable obstacles to reunification, it may seek to be relieved from the obligation to make reasonable reunification efforts under ORS 419B.340(5), something DHS did not do here. And, beyond that, because of DHS's delay in starting the type of hands-on parenting training that mother required,[5] it cannot yet be ascertained whether the training will be futile because, as of the time of the hearing, the training had not been going on long enough to allow for a meaningful evaluation of whether mother could become a minimally adequate parent.

Reversed and remanded.

---

[5] DHS has never argued that the cost of hands-on training was prohibitive under the circumstances or that there were other circumstances that would make it reasonable not to make that training available to mother.