Argued and submitted December 23, 2019, reversed and remanded
March 4, 2020

In the Matter of C. L. S.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. E.,
*Appellant.*

Umatilla County Circuit Court
19JU03103; A171718 (Control)

In the Matter of C. J. S.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. E.,
*Appellant.*

Umatilla County Circuit Court
19JU03104; A171719

In the Matter of K. M. E.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. E.,
*Appellant.*

Umatilla County Circuit Court
19JU03105; A171720

In the Matter of K. A. E.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. E.,
*Appellant.*

Umatilla County Circuit Court
19JU03106; A171721

461 P3d 1091

In this consolidated appeal, mother appeals judgments taking dependency jurisdiction over her four children. At the jurisdictional hearing, the juvenile court concluded that case law holding that a parent's third-party care arrangement can render a child safe so as to preclude dependency jurisdiction did not apply because the third-party care arranged at issue in this case did not exist before DHS intervention. It took jurisdiction over the children based on its determination that mother's alcohol problem endangered the children. On appeal, mother contends that the court legally and factually erred in determining that the children were at risk of harm in view of mother's plan to enlist the help of family members to assist her while she dealt with her alcohol problem. *Held*: The juvenile court erred in concluding that the case law addressing third-party care arrangements did not apply where the arrangement was made after DHS involvement, and there is some likelihood that the court's error affected its ultimate jurisdictional determination.

Reversed and remanded.

Robert W. Collins, Jr., Judge.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Brewer, Senior Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

In this consolidated appeal, mother appeals judgments taking dependency jurisdiction over her four children.[1] The juvenile court took jurisdiction over the children based on its determination that mother's alcohol problem—along with the children's fathers' admissions that they, too, required the assistance of the Department of Human Services (DHS) to ensure that the children were safely parented—endangered the children. Mother contends that the court legally and factually erred in determining that the children were at risk of harm in view of mother's plan to enlist the help of family members to assist her while she dealt with her alcohol problem. We conclude that the court applied the wrong legal standard in evaluating whether dependency jurisdiction was warranted and, accordingly, reverse and remand.

The key facts are not disputed. Mother has a significant problem with alcohol that interferes with her ability to safely parent her children on her own. After an incident in which mother hit one of her children while she was intoxicated, DHS and mother entered into a protective action plan with mother's aunt, the children's great-aunt. Under the plan, mother's children were to stay with the aunt, with mother having only supervised contact with the children. Mother complied with the protective plan while it was in place.

After the children had been in the aunt's home for five days, DHS removed them. It did so because of 20-year-old "founded" allegations involving the aunt's husband. In the incident that led to the "founded" determinations, the aunt's husband, who was intoxicated at the time, became involved in an altercation with a friend that resulted in an

---

[1] Respondent Department of Human Services (DHS) has filed a notice of probable mootness with respect to the appeal of the jurisdictional judgments pertaining to two of mother's children, noting that the wardships of those two children have been dismissed. Mother disputes that the appeal is moot with respect to those children, asserting that there are collateral consequences stemming from the appealed jurisdictional judgments. Having reviewed the parties' arguments, we are not persuaded that DHS has satisfied its burden to demonstrate that the appeal is moot as to those two children in the manner required by the Supreme Court's decision in *Dept. of Human Services v. A. B.*, 362 Or 412, 414, 412 P3d 1169 (2018).

injury to a child. The aunt's husband stopped drinking after the incident, and no similar incidents have occurred. Shortly after removing the children from the aunt's home, DHS filed dependency petitions with respect to each child.

In the meantime, mother worked with the aunt and the aunt's adult daughter, who lived in the same house, to develop a care plan for the children. Under that plan, which was very close to the same protective plan that DHS had put into place initially, the children would live with the aunt and her adult daughter, and they would care for the children until such time as mother was able to resume their care, even if it took months or years.

At the jurisdictional hearing, which took place about two months after DHS first removed the children from mother's care, mother had been in inpatient treatment for her alcohol problem for a week. Mother argued that, in view of the plan that she had made for the children's care, the juvenile court could not conclude that the children were presently at risk of harm from mother's alcohol problem. In support of that argument, she referred the juvenile court to our decisions in *Dept. of Human Services v. A. B.*, 271 Or App 354, 350 P3d 558 (2015), and *Dept. of Human Services v. A. L.*, 268 Or App 391, 342 P3d 174 (2015), both cases in which we concluded that DHS failed to establish that the children at issue faced the sort of loss or harm that would justify dependency jurisdiction in view of the role that third-party caregivers were playing in the children's lives. The court rejected mother's argument, distinguishing those cases on the ground that, in each case, the third-party care arrangement predated DHS involvement:

> "From what I heard of the cases, as you were reading them to me, and I listened as carefully as I could, those cases tended to hinge on the existence of a relationship between the children and the other family members that preexisted *** the removal of the children by DHS. And in this case, we're talking about something that happened coincident with DHS's removal of the children, and what they were removing the children from was the threat that was presented by Mom's alcoholism and her abuse of alcohol in a manner that has profoundly compromised these children."

The court concluded that mother's alcoholism posed a risk to the children based on what it had heard about how it had affected them but expressed hope that DHS might nonetheless place the children with mother's aunt. It thereafter entered the jurisdictional judgments on appeal.

On appeal, mother assigns error to the juvenile court's determination that dependency jurisdiction was warranted as to each child. She argues that the court erred when it determined that our decisions in *A. L.* and *A. B.* did not control because those cases involved third-party caregiving arrangements that preexisted DHS involvement. She contends that the principles at play in *A. L.* and *A. B.* are not so limited, because our other decisions recognize that third-party care arrangements, no matter when established, can be sufficient to render children safe, thereby precluding dependency jurisdiction. Mother further asserts that, when the record is viewed under the correct legal standard, the evidence presented below is legally insufficient to support a determination that the children were at risk of harm in a way that would permit dependency jurisdiction. DHS responds, in the main, that the evidence is legally sufficient to support the court's determination that the children were at risk of harm, notwithstanding mother's proposed caregiving plan.

We conclude that the juvenile court legally erred when it determined that *A. L.* and *A. B.* were not applicable because those cases involved third-party care arrangements that predated DHS involvement. As we have explained elsewhere, one way a parent can mitigate the risk of harm posed to children by certain conditions is to enlist the help of third parties to care for the children. That a parent did not establish the third-party caregiving arrangement before DHS involvement does not preclude a juvenile court from taking that arrangement into account in assessing whether a child faces the type of current risk of injury or harm that allows for dependency jurisdiction:

> "[E]vidence that a parent has the assistance of friends and family members is relevant to the jurisdictional inquiry, because it is probative of how likely it is that the threat of harm or injury presented by the alleged or established

jurisdictional bases will be realized. If the involvement of friends and family members sufficiently counters the risk to a child otherwise presented by a parent's deficits so that the child is safe, dependency jurisdiction is not warranted."

*Dept. of Human Services v. J. G. K.*, 298 Or App 398, 402, 449 P3d 531 (2019); *see also Dept. of Human Services v. T. L.*, 279 Or App 673, 684-85, 379 P3d 741 (2016) (explaining that "evidence of measures that parents have taken to mitigate any risk posed by particular jurisdictional bases will be probative of how likely it is that risk of harm posed by those jurisdictional bases will be realized if jurisdiction is dismissed and a child is returned to his parents or legal guardians").

Here, the evidence of the caregiving arrangement that mother reached with her aunt and the aunt's daughter is evidence that would permit, but not necessarily compel, the conclusion that the children were not at risk from mother's alcohol problem at the time of the jurisdictional hearing. Although the juvenile court did not exclude the evidence of that arrangement, its statements on the record demonstrate that it erroneously determined that it was not required to consider that arrangement in determining whether the criteria for dependency jurisdiction were met because the arrangement did not exist before DHS's involvement, as had been true in *A. L.* and *A. B.* Although mother argues that this case is indistinguishable from *A. L.*, such that a court would be compelled to find that DHS had not proved that the children face a current risk of injury or harm sufficient to allow for dependency jurisdiction, we disagree. Although the juvenile court erred in concluding that the fact that the third-party care arrangement did not exist at the time DHS intervened meant that it did not need to take that arrangement into account when assessing jurisdiction, the fact that mother's proposed arrangement had not been tested over time would permit a juvenile court to find that it was not persuaded that the plan would mitigate the risks that mother's alcohol-abuse problem posed to the children.

We conclude further that there is at least some likelihood that the court's error affected its ultimate jurisdictional determination; the court's comments on the record expressing hope that the children might be placed with

the aunt's family suggest that it perceived that as a safe arrangement. We therefore reverse and remand for the court to reconsider its decision under the correct legal standard. *See T. L.*, 279 Or App at 692 (taking similar approach).

Reversed and remanded.