Argued and submitted July 6, affirmed September 2, 2020, petition for review denied January 21, 2021 (367 Or 496)

In the Matter of A. M. C.-R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. A. C.-R.,
*Appellant.*

Lane County Circuit Court
16JU07482; A171869 (Control)

In the Matter of H. C. C. R.,
aka H. R., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. A. C.-R.,
*Appellant.*

Lane County Circuit Court
16JU07483; A171870

473 P3d 1167

In this juvenile dependency case, father appeals a judgment changing the permanency plans for his two children from reunification to guardianship. After living in Mexico with father for years, mother and children fled to Oregon, with assistance from the Mexican government, to escape father's domestic violence. Several months later, the juvenile court asserted jurisdiction over children. Father continues to live in Mexico and is legally barred from reentering the United States. Father contends that the juvenile court erred in changing children's permanency plans, because the Department of Human Services (DHS) did not make reasonable efforts to reunify children with him. In particular, father points to DHS's failure to offer him any domestic violence treatment services in Mexico. *Held*: The juvenile court did not err. The record establishes that DHS made substantial efforts to locate services for father and to provide services to father, but that certain services are unavailable in the area where father lives, including domestic violence programs for perpetrators (as distinct from victims). Under the specific circumstances of this case, the trial court did not err in determining that DHS made reasonable efforts towards reunification.

Affirmed.

Jay A. McAlpin, Judge.

Holly Telerant, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

In this juvenile dependency case, father appeals a judgment changing the permanency plans for his two daughters, A and H, from reunification to guardianship. Father challenges the juvenile court's determination that the Department of Human Services (DHS) made reasonable efforts toward reunification. We conclude that the juvenile court did not err and, accordingly, affirm.

Father has not requested *de novo* review, and we decline to conduct *de novo* review. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c). We are therefore bound by the juvenile court's factual findings as to what efforts DHS has made, so long as there is any evidence in the record to support them. *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). Whether those efforts constitute "reasonable efforts" for purposes of ORS 419B.476(2)(a) is a question of law that we review for legal error. *Dept. of Human Services v. V. A. R.*, 301 Or App 565, 567, 456 P3d 681 (2019).

Father and mother met in Oregon. After A's birth in 2010, the family moved to Mexico, where H was born in 2013. In 2016, with the assistance of the Mexican government, mother and children returned to Oregon, essentially fleeing from father's domestic violence. Later the same year, DHS removed children from mother's care and filed dependency petitions. In October 2016, the juvenile court asserted jurisdiction over children on two bases admitted by mother—that her developmental disability interferes with her ability to safely parent children and that she is unable to protect children from father's domestic violence—and one basis admitted by father—that the nation of Mexico had recognized that he was not safe to be around children and flew children back to the United States to escape his violence.

We limit our discussion to father, as mother is not a party to this appeal. In conjunction with asserting jurisdiction over A and H, the juvenile court ordered father to complete a comprehensive psychological evaluation with a DHS/CWP approved provider, complete domestic violence counseling with a DHS/CWP approved provider, complete a DHS/CWP approved parent training program, and maintain safe and stable housing as approved by DHS/CWP. In

November 2016, March 2018, and September 2018, DHS sent letters to father listing the same expectations.

Throughout the dependency proceedings, father has remained in Mexico, where he is originally from; he is legally barred from reentering the United States. DHS has stayed in contact with father, and it has arranged twice-weekly video visits with children. In 2017, DHS obtained a home study of father's home through the Mexican child protective agency, Desarrollo Integral Familiar (DIF). DIF rated father's home as "B+ level," meaning that it has minimum sanitary infrastructure but would not meet children's needs. As part of the home study, DIF determined that father lacked a stable income, reported that the neighbors described father as violent toward mother, and ultimately recommended against placing children with father due to his violent behavior. Also as part of the home study, father received a psychological evaluation, from which the psychologist concluded that father needed to address several issues, including emotional stability, impulse control, and anger management.[1]

It appears that father may have participated in some services in Mexico of his own accord. The DHS caseworker testified that father told her that he was attending parenting classes and counseling but that she did not receive any documentation. Father testified that he had participated in therapy and anger management in Mexico and sent "documents" to DHS "a couple of times." The only documentation in the record indicates that father attended some "therapy" sessions through Yucatan Health Service, during which no determination was made as to whether he is violent.[2]

---

[1] Father subsequently obtained a second psychological evaluation at the Yucatan Health Service, which DHS found unsatisfactory, both because of who performed it and because it relied on father's self-reports that he was not violent and would never hit a woman, rather than external evidence. Father also obtained a second DIF home study in 2018, which noted some home improvements but made no placement recommendation.

[2] Throughout the dependency proceedings, father has continued to deny that he has ever been abusive toward mother, A, or H. We do not consider that fact relevant to whether DHS made reasonable efforts toward reunification. Whether or not father currently admits to domestic violence, he has never refused to participate in services, let alone done so persistently enough to affect DHS's obligations. *See Dept. of Human Services v. C. L. H.*, 283 Or App 313, 328-29, 388 P3d 1214 (2017).

As for referring father for services, DHS has never done so, because it has been unable to locate any appropriate services where father lives in Mexico. Both DHS caseworkers who have been assigned to the case have contacted DIF on numerous occasions, trying to identify services available in the area, and the first caseworker also searched online to try to find any local services. By their own estimates, the caseworkers called DIF at least 50 times, although some of those calls were in connection with trying to schedule and get the results of the home study. DHS needed to communicate with DIF about services because the DHS caseworkers were unfamiliar with the services in Mexico. Based on their fruitless conversations with DIF workers and the first caseworker's unsuccessful online searches, the caseworkers came to understand that the only domestic-violence programs available in Mexico were for victims, not perpetrators.[3]

In early 2019, DHS moved to change children's permanency plans from reunification to guardianship. Father contested the change. After hearing testimony from mother, father, the two DHS caseworkers, a psychologist, and an international case consultant, the juvenile court changed A's and H's plans to guardianship. As a predicate to doing so, the court concluded that DHS made reasonable efforts toward reunification, noting the "unfortunate" reality that father was in a different country where services were not readily available to him. *See Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017) (before the juvenile court may change a child's plan away from reunification, DHS must prove by a preponderance of the evidence that DHS made reasonable efforts to make it possible for the child to be reunified with his or her parent and that, notwithstanding those efforts, the parent's progress was insufficient to make reunification possible).

Father appeals the permanency judgment, challenging the juvenile court's determination that DHS made reasonable efforts toward reunification. In six assignments

---

[3] DHS was similarly unsuccessful in identifying any parenting classes for father to attend. However, the only jurisdictional basis as to father pertains to his domestic violence, and father challenges only DHS's failure to refer him to domestic-violence services, so we focus our discussion on domestic-violence services.

of error, father challenges the juvenile court's reasonable-efforts determination as to each child, its insufficient-progress determination as to each child, and its change of plan for each child. However, the crux of all six assignments of error is that DHS did not make reasonable efforts to reunify children with father. We therefore focus our discussion on the reasonable-efforts issue.

Father argues that, because DHS never referred him to any domestic-violence services, he was not provided a meaningful opportunity to adjust his conduct and become a minimally adequate parent. *See Dept. of Human Services v. D. M. R.*, 301 Or App 436, 444, 455 P3d 599 (2019) ("Reasonable efforts to reunify a child with her parent focus on ameliorating the adjudicated bases for jurisdiction and give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." (Internal quotation marks omitted.)). DHS responds that its efforts were reasonable under the particular circumstances of this case. *See Dept. of Human Services v. M. K.*, 257 Or App 409, 416, 306 P3d 763 (2013) (recognizing that whether DHS made reasonable efforts toward reunification "depends on the particular circumstances").

In another case decided today, *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 473 P3d 131 (2020), we discuss at length the legal principles relevant to the reasonable-efforts determination that a juvenile court must make before changing a child's permanency plan away from reunification. Applying those principles here, we agree with DHS that the juvenile court did not err in concluding that DHS made reasonable efforts toward reunification under the particular circumstances of this case.

In *K. G. T.*, we hold that a juvenile court erred in concluding that DHS made reasonable efforts to reunify a child with his father, who was incarcerated throughout most of the dependency proceedings. 306 Or App at 370. In that case, the father needed substance abuse treatment, parent training, and mental health services to address the jurisdictional bases. *Id*. at 371. Upon determining that the Department of Corrections ("DOC") did not have any such services available to the father, DHS never considered

trying to arrange services itself, instead taking the view that it could provide services to the father once he was out of prison and it was easier to do so. *Id*. at 376, 381-82. The father had been incarcerated for a year before the permanency hearing and would remain incarcerated for at least another seven months after it. *Id*. at 371-72, 382-83. On that record, we concluded that DHS did not provide sufficient evidence to meet its burden to show that it made reasonable efforts toward reunification. *Id*. at 384-85.

This case is different from *K. G. T.* in two respects. The first is that DHS made much more extensive efforts to try to find services for father in this case than it made in *K. G. T.* The DHS caseworkers repeatedly called DIF, the Mexican child protective agency, trying to identify what services were available in Mexico, but DIF itself does not provide services, and DIF was unable to identify any appropriate services for father. Although father characterizes those efforts as DHS "delegating" its responsibility to DIF, it is more accurate to say that DHS reasonably sought assistance from DIF, given DHS's own unfamiliarity with the services available in Mexico and the lack of other obvious means to identify local services. In addition to the contacts with DIF, the first DHS caseworker ran online searches to try to identify any local services available, but they were fruitless. On this record, it is reasonable to infer that there simply are no domestic violence programs available to father where he lives in Mexico.

The other distinguishing feature of this case is that DHS has no control over the services available to father in Mexico. When a parent is incarcerated in a state prison in Oregon, like the father in *K. G. T.*, DHS itself may have no control over DOC, but both DHS and DOC are ultimately agencies of the State of Oregon, making it more difficult for "the state" to claim that it has no control over the services available to a person in an Oregon prison. Further, when a parent in a dependency case is incarcerated in Oregon, there may be institutional barriers or higher costs for DHS itself to provide services to an incarcerated parent, but there is no geographic barrier to providing services. By contrast, it is obvious, and father implicitly recognizes, that it would be cost prohibitive under any standard for DHS to

fly service providers to Mexico to provide services to father. Father suggests that DHS could have investigated online programs, but we are unpersuaded, at least under these circumstances, that DHS's failure to consider that possibility rendered its efforts toward reunification unreasonable.

Under the particular circumstances of this case, the juvenile court did not err in concluding that DHS made reasonable efforts toward reunification, in support of its change of A's and H's plans from reunification to guardianship. We do not mean to suggest that DHS's obligation to make reasonable efforts toward reunification is less with respect to parents who reside in foreign countries than those who reside in Oregon—it is not. Rather, we simply recognize that, when there is truly no feasible way to provide a service to a parent, DHS cannot be required to provide that service as a condition of proving that it made reasonable efforts toward reunification, as that would have the effect of leaving the child stuck in limbo, unable to ever have her or his plan changed away from reunification. *See K. G. T.*, 306 Or App at 381 (rejecting such proposition); *see also* ORS 419B.476(2)(a) ("In making its determination, the court shall consider the ward's health and safety the paramount concerns."). Here, the evidence was sufficient to establish that DHS made substantial efforts to identify services for father in Mexico and that the services were simply unavailable.

Affirmed.