No. 166          February 26, 2025          281

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. C.,
*Appellant.*

Coos County Circuit Court
23JU00404; A185184 (Control)

In the Matter of B. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. A.,
*Appellant.*

Coos County Circuit Court
23JU00405; A185186

Matthew P. Muenchrath, Judge.

Argued and submitted January 28, 2025.

Christa Obold Eshleman argued the cause for appellants children. Also on the brief was Youth, Rights & Justice.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

In this dependency case, children appeal a permanency judgment changing their plan from reunification to guardianship. Parents (mother and father) are not parties to this appeal. Children raise four assignments of error that concern the reasonableness of the Department of Human Services' (DHS) efforts to reunify the family. We affirm.

In a dependency case in which we do not review *de novo*, "we are bound by the juvenile court's factual findings if there is any evidence in the record to support them." *Dept. of Human Services v. K. R. K.*, 336 Or App 843, 561 P3d 1153 (2024) (citing *Dept. of Human Services v. Y. B.*, 372 Or 133, 136, 546 P3d 255 (2024)). "[T]he juvenile court's determination that DHS made reasonable efforts is a legal conclusion that we review for errors of law, and, in so doing, we consider the evidence in the light most favorable to the juvenile court's disposition to determine whether it supports that court's legal conclusions. *Id.* (citing *Dept. of Human Services v. C. H.*, 373 Or 26, 46-49, 559 P3d 395 (2024).

*First Assignment of Error.* In their first assignment of error, children contend that the juvenile court erred when it, in their view, impermissibly shifted the burden of proof to father. In the permanency judgment, after noting that father did not appear at the permanency hearing, the juvenile court found that "[h]e provided no evidence or reason to not change the plan," and noted that it could "find no evidence that [father] has alleviated any of the original conditions and circumstances that brought the children into care."

Children are correct that DHS alone "bears the burden of proof at a permanency hearing, and it must prove the facts supporting a change in the permanency plan by a preponderance of the evidence." *C. H.*, 373 Or at 47-48. However, the record does not support their contention that the juvenile court engaged in burden shifting—the court simply stated, accurately, that father did not provide any evidence. And, after reviewing the record, we conclude that DHS met its burden, and thus any error would be harmless.

*Second Assignment of Error.* Children next assign error to the juvenile court's finding that there was "no

evidence in this record to show how [a mental health evaluation and mental health services for mother] would alleviate the conditions and circumstances that led to the removal of the children." Children contend there was "ample and uncontroverted evidence in the record" that mother's mental health conditions were inhibiting her from remaining sober.

We are bound by the juvenile court's finding that the record lacked evidence showing how a mental health evaluation and mental health services would alleviate the conditions and circumstances that led to the removal of the children provided there is any evidence in the record to support it. *Y. B.*, 372 Or at 136. The record supports the court's finding. First, the juvenile court correctly observed that mother had poor attendance and was noncompliant at her current dual diagnosis program, ADAPT. DHS referred mother to ADAPT for a mental health assessment and substance use assessment four months before the permanency hearing, following an escalation of mother's in-home safety plan. *Cf. Dept. of Human Services v. V. A. R.*, 301 Or App 565, 569, 456 P3d 681 (2019) (reversing change in permanency plan when "it was determined early in the case * * * that mother required hands-on, in-person parent training" and DHS did not provide that type of training for most of the life of the case). According to the referral, mother was already engaged at ADAPT and DHS's referral for assessments would be a continuation of her treatment. But despite this support, mother only made minimal progress, attended about half of her treatment groups, and failed to maintain sobriety.

Second, the "ample" evidence in the record that children rely on—a handful of statements from the juvenile court record—does not contradict the court's ultimate finding. Those statements either discuss generalized emotions (*e.g.*, feeling "low" or "overwhelmed"), and not necessarily mental health concerns requiring assessment and treatment, or fail to show a direct link between mother's mental health struggles and lack of sobriety, such that DHS would have been required to offer additional mental health treatment to "alleviate the conditions and circumstances" that led to the children's removal.

*Third Assignment of Error.* Children next assign error to the juvenile court's factual finding that DHS provided parents with a dual diagnosis evaluation and treatment for mother, alcohol and drug treatment and testing, and parent training, contending that it is not supported by the record.

Children are partially correct: father did not actually engage in any services, and although DHS did provide a referral for mother to ADAPT, a dual diagnosis program, for a drug and alcohol assessment and mental health assessment, the record lacked evidence about the evaluation and mental health treatment provided there.

However, the error does not require reversal because there is little likelihood that it affected the outcome. *See Dept. of Human Services v. M. E.*, 302 Or App 571, 576, 461 P3d 1091 (2020) (error warrants reversal when there is "some likelihood that the court's error affected its ultimate *** determination"). Even absent these services, DHS still provided reasonable efforts to reunify the family based on the services it did provide, including the referral to a dual diagnosis ADAPT program.

*Fourth Assignment of Error.* Lastly, children argue that the juvenile court erred in ruling that DHS made reasonable efforts to reunify the family. In particular, children argue that it was unreasonable not to provide mother with mental health services to better equip her in addressing her substance use problems, and both DHS and the court relied on an erroneous understanding of the law—namely, a belief that DHS could not provide mental health services unless mental health was a basis for the juvenile court's jurisdiction. Although children did not make these arguments below, they contend that mother's arguments to the juvenile court allowed the court and the parties to adequately address the issue.

Assuming that the issue is preserved, we conclude that DHS's efforts were reasonable because they gave mother a reasonable opportunity to address the court's jurisdictional basis—specifically, her substance abuse. *C. H.*, 373 Or at 50 (the "reasonableness of DHS's efforts must

be evaluated in light of the bases for jurisdiction identified in the juvenile court's judgment"). DHS's efforts, which included an in-home safety plan, transportation assistance, and a referral to a dual diagnosis program for a mental health evaluation and treatment, combined with mother's four self-referrals to inpatient drug treatment facilities, gave mother a reasonable opportunity to address her substance abuse and how it interfered with her parenting. *See Dept. of Human Services v. C. H.*, 327 Or App 61, 74, 533 P3d 1112 (2023), *aff'd*, 373 Or 26, 559 P3d 395 (2024) (noting that we "evaluate the reasonableness of DHS's efforts in their totality and over time"); *Dept. of Human Services v. H. K.*, 321 Or App 733, 746-47, 517 P3d 1044 (2022) ("Ultimately, whether DHS's efforts afforded a parent the requisite reasonable opportunity to address the jurisdictional bases depends on the particular circumstances of the case."). In addition, mother's lack of involvement with her dual diagnosis program—she failed to provide several UAs and only attended about half of her treatment groups—and her continuing to relapse while caring for her daughter on an in-home safety plan are relevant factors in considering the reasonableness of DHS's services. *See Dept. of Human Services v. D. M. D.*, 301 Or App 148, 156, 454 P3d 838 (2019) (noting that lack of parental involvement is a factor in measuring "the reasonableness of DHS's efforts by looking at the totality of the circumstances"). And though children are correct that a juvenile court may order a psychological evaluation of a parent whether or not mental health is a basis for jurisdiction, *Dept. of Human Services v. W. C. T.*, 314 Or App 743, 776, 501 P3d 44 (2021), it does not necessarily follow that DHS was *required* to order a psychological evaluation in order for its efforts to be "reasonable." Accordingly, we find no error in the juvenile court's determination that DHS's reunification efforts were reasonable.

Affirmed.