Submitted March 29, reversed June 30, 2021

In the Matter of B. D.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. W.,
*Appellant.*

Douglas County Circuit Court
16JU07326;
Petition Number 1600312;
A174224

493 P3d 74

In this juvenile dependency case, mother appeals a judgment changing the permanency plan for her seven-year-old son, B, from reunification to adoption. The juvenile court's jurisdiction was originally based on mother's substance abuse and problems with anger control. Mother engaged in treatment aimed at those problems, and the court later dismissed jurisdiction as to anger control, but determined that mother's substance abuse continued to pose a risk to B. At the permanency hearing, the Department of Human Services (DHS) argued that mother's progress toward reunification was insufficient for purposes of ORS 419B.476(2)(a) because she had stopped engaging in treatment. DHS did not provide evidence that mother had resumed drinking. Mother argued that she had graduated from treatment four times and had taken to heart what she had learned. The juvenile court determined that mother's progress toward reunification had been insufficient and granted DHS's motion, stating that mother needed to prove that she did not have an alcohol problem. *Held*: DHS did not meet its burden to prove that mother's progress toward ameliorating the effects of her substance abuse qualified as insufficient for purpose of ORS 419B.476(2)(a). Accordingly, the juvenile court lacked authority to change B's permanency plan away from reunification.

Reversed.

Ronald D. Grensky, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed.

**ARMSTRONG, P. J.**

In this juvenile dependency case, mother appeals a judgment changing the permanency plan for her seven-year-old son, B, from reunification to adoption. Mother challenges the juvenile court's determination that mother's progress toward reunification was insufficient. We agree with mother that the juvenile court erred and, accordingly, reverse.

Neither party has requested *de novo* review, and this does not otherwise appear to be the type of "exceptional" case that would warrant it. *See* ORAP 5.40(8)(c). We therefore are bound by the juvenile court's findings, so long as there is any evidence in the record to support them. *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). Whether mother's progress was sufficient for purposes of ORS 419B.476(2)(a) is a legal question that we review for legal error. *Dept. of Human Services v. G. N.*, 263 Or App 287, 294, 328 P3d 728 (2014).

## I.   BACKGROUND

We describe the facts in three parts: (1) the period before B was last removed from the home and placed in substitute care, April 2016 to July 2019; (2) the period between the July 2019 removal and the jurisdictional hearing in December 2019; and (3) the period between the December jurisdictional hearing and the hearing to change the permanency plan from reunification to adoption.

A.   *Circumstances Before B's Removal to Substitute Care*

B was born in 2013. In August 2016, DHS received a report that mother dropped B off at a relative's home and that mother smelled of alcohol. B was wearing dirty clothes and had bandages covering wounds on his feet that appeared to be burn marks. Later that month, B was in mother's care when mother was intoxicated and, along with two others, physically assaulted mother's sister. The juvenile court established jurisdiction over B based on mother's stipulation that her anger-control problem and substance abuse interfered with her ability to safely parent B.[1] After

---

[1] Father's severe mental health issues prevented him from safely parenting B. Father's parental rights were terminated in 2018.

that, mother participated in substance-abuse treatment, parenting classes, and therapy with B. In an assessment during her treatment, mother was diagnosed with an alcohol-use disorder. DHS reported that mother's alcohol use led to impulsive and aggressive behavior.

In July 2017, DHS told the juvenile court that mother had "made good progress in addressing her substance abuse and mental health." DHS also noted a positive change in mother's behavior, stating that the "manner in which [mother] relates to her caseworkers and others indicates a significant shift in her thinking and worldview." Based on mother's progress DHS returned B to mother's care in July 2017, and DHS reported that the trial reunification was going well.

Four months later, in November 2017, DHS received a call that mother had reportedly used alcohol and that she had been "talking down" to B. DHS investigated, found alcohol in the home, and determined that a safety threat existed. DHS removed B from mother's care that day.

After B's November 2017 removal, mother continued engaging in services aimed at alcohol recovery and mental-health care. DHS told the court that mother had been "providing negative [urinalyses]." In March 2018, mother reported to DHS that she had used alcohol. After her reported relapse, the juvenile court held a contested permanency hearing and changed the permanency plan for B from reunification to adoption in April 2018. Mother continued attending the alcohol-treatment programs that DHS requested.

In January 2019, having determined that mother had made significant progress in her counseling and parenting classes, DHS returned B to mother's care, and the juvenile court restored the permanency plan from adoption to reunification. DHS implemented an in-home safety plan that required safety-service providers to check in on mother at least three times a week. Those providers were to report to mother's caseworker whether mother had "relapsed on any mind[-]altering substance."[2]

_____

[2] At one point, DHS had listed B's maternal grandmother as a safety-service provider, but mother contacted her caseworkers to notify them that, because the grandmother used alcohol, she was not an appropriate safety-service provider.

Mother brought B to weekly visits with a clinical therapist. According to the therapist, mother was dedicated to obtaining therapy for B and prioritized attending counseling with him. In March 2019, DHS reported that mother had graduated from treatment in substance-abuse programing and had completed all counseling and anger-management classes that DHS had recommended. Mother and B were working well together in parent-child therapy, and mother's caseworkers reported that B was receiving the parenting he needed "to feel safe, cared for and secure that his needs will be met." Further, it reported that "[B's] behaviors [had] decreased now that he [was] home with mom."

Since B's return to mother in January 2019, mother's caseworker, Maxwell, visited mother monthly at mother's home to talk with mother and B and assess how the trial reunification was going. Maxwell reported that mother appeared to be meeting B's needs. In April 2019, mother reported to DHS that she had drunk alcohol. She immediately contacted her caseworker and her alcohol-abuse counselor to inform them of the relapse, then she self-referred for further treatment. During that time, mother's caseworker visited mother and B and reported that she had observed no safety threat to B. Moreover, DHS reported to the court that B appeared to be "receiving the close supervision, limit setting, predictable routines, non-physical consequence, non-violent role modeling, and positive affirmation/attention he needs to feel safe, cared for and secure that his needs will be met." According to B's therapist, since B was returned to mother in January 2019, B was improving, and mother collaborated in B's treatment. The therapist stated that mother supported B's development and growth, and that there were "no indicators" that she was unable to safely parent.

After mother's early-April 2019 relapse, DHS reported to the juvenile court that mother had provided alcohol-negative urinalyses on April 19, April 26, April 30, May 10, May 13, June 7, and June 21 in 2019. Mother had missed four appointments around that time, but her substance abuse counselor noted that it was because the local drug-testing office had temporarily closed.

By July 2019, mother had attended numerous one-on-one alcohol abuse counseling sessions and had four times completed an outpatient alcohol-treatment program recommended by DHS, each time lasting roughly 40 weeks. According to mother, anytime she reported a relapse, DHS asked her to engage in the program again, and she did. Mother also made regular contact with safety-service providers, completed anger-management treatment, engaged in parenting classes, and regularly attended therapy sessions with B in addition to her weekly visits with him.

On July 2, 2019, DHS was notified that mother had tested positive for alcohol and methamphetamine. After that, mother provided four more random UAs on July 7, 11, 12, and 16, each time testing negative for substances. On July 12, 2019, DHS reported to the juvenile court that B's therapist was concerned about B's "mental health if he has to be moved from home again" and that, at home with mother, B "is active, appears healthy, is following routines, and acts like he is comfortable and safe at home." On July 18, 2019, mother provided a UA that was positive for alcohol. Due to those two positive test results on July 2 and July 18, and a missed doctor's appointment for B, DHS again removed B from mother's care.

B.  *Circumstances Leading Up to December 2019 Jurisdictional Hearing*

After B was removed from mother's care for the third time in July 2019, mother requested a new caseworker. DHS denied her request, and mother stopped communicating with her assigned caseworker. Mother's attendance in alcohol-treatment programs waned, and she expressed frustration about completing the program multiple times. DHS reported that mother did not acknowledge her use of alcohol as a problem. Mother remained consistent in therapy sessions and visitation with B. In December 2019, the juvenile court held a hearing on mother's motion to dismiss dependency jurisdiction and terminate its wardship over B.

At the hearing, mother admitted to drinking after DHS removed B and that she had drunk alcohol the night before the hearing. She also said that she occasionally used

alcohol to help her fall asleep. She stated that she has an "alcohol issue" but denied that she was an alcoholic. After the hearing, the court dismissed its jurisdictional basis pertaining to mother's anger control but continued jurisdiction over B based on mother's substance abuse, generally concluding that the risks of harm to B were still present.[3]

C.   *Circumstances at Time of Change in Permanency Plan*

In June 2020, the juvenile court held a permanency hearing on DHS's motion to change B's permanency plan from reunification to adoption. At the hearing, DHS argued that, despite its efforts to reunite B with mother, mother's progress toward reunification was insufficient. DHS contended that mother had not responded to its letters of expectation or to her caseworker's phone calls. Mother had told DHS to speak to her through her attorney. Mother's caseworker testified that, because mother had not "engaged in any types of treatment," she was not meeting the "in-home criteria" DHS had set for her. The caseworker stated that mother was a good parent for B when she was not drinking, but that mother needed to provide "verification" of her claimed sobriety.

When asked whether mother would be willing to engage in the alcohol treatment program again—the one that she had completed four times—she responded "I will not engage in [the program] anymore." She said that she would voluntarily submit to urinalysis testing if DHS returned B to her care, but that she had "done every class" multiple times and believed that she had taken to heart the skills that she had learned. She also explained that she was facing eviction and that she could not afford to take the time off work necessary to attend the program again. Mother stated that she understood that she was "an alcoholic" and that, since admitting that, her recovery had only improved. She said that she had not had a drink since the jurisdictional hearing in December 2019 and that staying sober for B was her top priority. DHS did not provide any evidence that mother had resumed drinking or that she

---

[3] On mother's appeal, we affirmed the juvenile court's order in November 2020 without issuing a written opinion. *Dept. of Human Services v. C. W.*, 307 Or App 659, 476 P3d 131 (2020).

had engaged in violent behavior as a result of any recent relapses.

B's foster-care provider testified that she and mother had developed a good relationship and that mother always acknowledged the effort that the provider puts in with B. Mother visits the provider's home to spend time with B. The provider said that she had never experienced any interpersonal difficulties with mother and that mother spent Christmas in 2019 with B in the provider's home with her whole family and has kept in close contact throughout B's placement there. The provider testified that she has never had any reason to be concerned about mother's behavior and that mother and B "have a very strong bond." The provider had cared for more than 30 foster children over the years, and, among them, she has "never really seen a bond quite like what [B] has with his mom." She explained that B often expresses his desire to be reunited with mother.

B's therapist, who treats B weekly, said that mother "engages in family therapy with [B] every other week to support his treatment goals." She testified that "mother was able to follow treatment guidelines" and was "able to support her son." The therapist said that mother's attendance at therapy with B was "regular" and "consistent" and that there had been only four instances when mother had to reschedule.

Apart from mere attendance, B's therapist said that mother was able to "accurately read and interpret [B's] cues regarding emotions," and that she had observed mother apply the principles she had learned in therapy to engage in difficult discussions, help B relax, and guide B in regulating his feelings safely. She further said that mother's participation had been "helpful" to B.

Mother's attorney argued that mother's ability to absorb material and integrate it into her interactions with B demonstrates her capacity to have accomplished the same with the alcohol-treatment programs. Mother's attorney questioned the caseworker, asking whether, despite mother's relapse in April 2019, DHS had nevertheless "felt that the conditions for the in-home plan were met and that reunification was appropriate" at that time? The caseworker answered "yes." She also acknowledged that, when someone

is engaged in recovery from substance abuse, periods of relapse are part of the pattern and do not always equal failed recovery.

At the end of the hearing, mother argued against any change in plan, asserting that DHS had failed to meet its burden of proving that mother was still abusing alcohol and that she did not bear the burden to prove to DHS that she was sober.

The juvenile court granted the department's motion and changed B's permanency plan from reunification to adoption. In doing so, the court reasoned that mother was "gonna have to play the game, so to speak, at least as far as proving to [DHS] that you don't have this alcohol problem" because, without doing so, "then there's no hope for you, in, in terms of reunification." The court did not make specific findings as to DHS's efforts or mother's progress. When the juvenile court does not make findings on disputed issues of fact, but the evidence supports more than one factual determination, "we presume that the court decided those issues in a manner consistent with its ultimate conclusion." *Dept. of Human Services v. J. R. L.*, 256 Or App 437, 439, 300 P3d 291 (2013). Mother appealed. The parties reprise the arguments that they made below.

## II.  ANALYSIS

To change B's permanency plan from reunification to anything else, under ORS 419B.476, DHS must prove by a preponderance of the evidence both: (1) that DHS made "reasonable efforts" to reunify B with mother; and (2) that, notwithstanding those efforts, mother's progress was not sufficient to allow reunification. *Dept. of Human Services v. V. A. R.*, 301 Or App 565, 567, 456 P3d 681 (2019). Both DHS's efforts and a parent's progress are evaluated by reference to the facts that formed the bases for juvenile court jurisdiction. *Dept. of Human Services. v. C. M. E.*, 278 Or App 297, 307, 374 P3d 969 (2016). The basis for the juvenile court's jurisdiction in December 2019 was mother's substance abuse and its connection to mother's violent behavior. At the jurisdictional hearing, mother admitted that she had used alcohol on several occasions, including the night before

the hearing, but testified that she had not engaged in any violent behavior as a result.

Here, mother does not challenge the court's conclusion that DHS had made reasonable efforts. Therefore, we address whether DHS provided sufficient evidence for the court to conclude that mother's progress was insufficient to make it possible for B to safely return home. The "paramount concern" in ORS 419B.476 is the "health and safety" of the child.

Summarizing the facts presented at the hearing as recounted above, DHS offered evidence that (1) by 2019, mother had completed multiple alcohol-treatment programs and other forms of therapy; (2) after B's July 2019 removal, mother stopped attending alcohol-treatment classes and was therefore not meeting the in-home criteria that DHS had established for mother; and (3) mother was only willing to communicate with DHS through her attorney. DHS did not present any evidence that mother currently abused alcohol[4] but asserted that mother needed to engage in further treatment to prove that she was sober. DHS likewise presented no evidence that mother continued to have a problem with violence that was tied to her drinking.

At the jurisdictional hearing in 2019, mother minimized her use of alcohol, yet she told the juvenile court that she had drunk alcohol on occasion in the time leading up to the hearing. Accordingly, the juvenile court had direct testimony from mother concerning her substance abuse at that time. Thus, its jurisdictional findings were supported by evidence.

At the permanency hearing, mother did not minimize her alcohol use. She said that she understood that she is an alcoholic. She testified that, due to the programs in which she had participated, she had made significant progress in her recovery and had not had any alcohol since December 2019. It was also mother's testimony that she

---

[4] On appeal, DHS argues that B's maternal grandmother "believed" that mother was currently abusing substances. However, the evidence was that the grandmother had no personal knowledge of any alcohol use by mother and had not been in contact with mother in several months. DHS did not dispute that evidence at the permanency hearing.

believed that, if she did relapse, she nevertheless would be able to safely parent B now, just as she had in April 2019 when she had relapsed and when DHS had determined that, despite the relapse, no safety threat existed.

DHS did not present evidence to the contrary. Rather, the caseworker confirmed that, when mother had relapsed in April 2019, she was apparently still meeting B's needs. Neither B's therapist nor foster provider identified any "indicators" to suggest that mother was unable to safely parent B, and neither had observed anything inappropriate about mother's behavior. Mother's attorney pointed to the therapist's statement that mother was able to take to heart therapeutic techniques and tools and apply those tools in emotionally difficult situations. In mother's view, that demonstrated her ability to do the same with the tools that she had learned in alcohol treatment.

In the context of dependency jurisdiction, where DHS expects the parent to complete treatment to ameliorate a parental deficit, we have determined that a parent's failure to complete treatment, in and of itself, does not establish that the deficit continues. *See Dept. of Human Services v. G. E.*, 246 Or App 136, 138-39, 265 P3d 53 (2011) (reversing juvenile court's denial of the mother's motion to terminate the wardship, where, despite the parent's nonparticipation in treatment, DHS failed to prove that mother's drug problem continued). Similarly, alcohol use, on its own, does not prove that mother posed a risk of harm to B. *See Dept. of Human Services v. E. M.*, 264 Or App 76, 83, 331 P3d 1054 (2014) (no jurisdiction where record did not contain evidence that mother's drug use posed a nonspeculative threat of serious loss or injury to child); *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172-73, 316 P3d 424 (2013) (same).

The juvenile court did not discuss whether mother was credible in her testimony concerning her sobriety, only that mother had failed to "play the game" and do what DHS had requested, which was that she engage in the treatment programs again to prove that she was sober. Though mother's participation in the services recommended by DHS bears on the progress that she has made towards reunification, the "paramount concern" in ORS 419B.476 is the "health

and safety" of the child. Here, the evidence from the foster provider and B's therapist was that mother was able to provide B with support and care and recognize his needs, and that there were no indicators of any current safety concern. Further, B has a "strong bond" with mother and has expressed his desire to be returned to her care. B's therapist stated a concern that B would experience distress the longer separation from mother continued. Mother's caseworker did not contradict that testimony.

In sum, we conclude that DHS did not meet its burden to prove that mother's progress toward ameliorating the effects of her substance abuse qualified as "insufficient" for purposes of ORS 419B.476(2)(a). If DHS fails to provide sufficient evidence that the parent's progress qualified as insufficient, then the court lacks authority to change the child's permanency plan away from reunification under ORS 419B.476(2)(a). *Dept. of Human Services v. R. D.*, 257 Or App 427, 433, 307 P3d 487 (2013). Accordingly, the juvenile court was precluded from changing B's permanency plan away from reunification.

Reversed.