No. 241 April 17, 2024 89

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of E. C. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. A. S.,
*Appellant.*

Wheeler County Circuit Court
21JU02419; A179842

John A. Wolf, Judge.

Argued and submitted June 08, 2023.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this juvenile dependency case, mother appeals a judgment that changed the permanency plan for her child, E, from reunification to guardianship. Mother contends that the juvenile court erred when it determined that she had made insufficient progress to ameliorate her pattern of substance abuse and, as a consequence, that it erred when it changed E's permanency plan. Because the record supports the juvenile court's determination that mother's progress was insufficient, we conclude that the court did not err. Accordingly, we affirm.

Mother does not request that we exercise our discretion to undertake *de novo* review and we decline to do so. *See* ORAP 5.480(8)(c) (providing that we exercise our discretion "only in exceptional cases"). "We therefore are bound by the juvenile court's findings, so long as there is any evidence in the record to support them. Whether mother's progress was sufficient for purposes of ORS 419B.476(2)(a) is a legal question that we review for legal error." *Dept. of Human Services v. C. W.*, 312 Or App 572, 574, 493 P3d 74 (2021) (citation omitted). We state the facts in accordance with that standard.

In December 2016, when E was eight years old, E and several family members were involved in a car accident that killed E's father and one of her siblings. Mother, who had driven the car, tested positive for methamphetamine at the hospital. After the crash, mother spent most days locked in her bedroom with her boyfriend. E was frequently absent or late to school and community members reported that they saw E walking alone at night between different homes.

In April 2021, when E was 12, mother was hospitalized for breathing problems, leaving E unsupervised at home. While mother was in the hospital, she tested positive for methamphetamine. DHS thereafter removed E from mother's custody. That summer, the juvenile court asserted jurisdiction over E based on mother's admissions that her "pattern of substance abuse interferes with her ability to safely parent [E]" and that E's father was deceased. After she was removed, E was diagnosed with severe depression that had been untreated for several years.

In January 2022, mother completed a mental health and substance abuse assessment that recommended, among other things, that she participate in weekly therapy and that she provide urinalysis tests (UAs).

In July 2022, DHS requested that the juvenile court change E's permanency plan from reunification to guardianship. E supported the change of plan. The juvenile court held a permanency hearing in September 2022 and heard testimony from mother and DHS regarding the foregoing facts. Mother disputed that she had failed to supervise E, testified that her children "have a tendency to over exaggerate," and argued that illness often prevented her from helping E prepare for school. Mother also testified that she had used methamphetamine only "a couple dozen" times in the last 25 years, that she had not used substances since she was hospitalized in 2021, and that "it was the hospital who told [her children]" that she had used drugs. Further, mother represented that she had consistently participated in therapy for three months but that she stopped in July 2022 when she learned that her counselor was leaving the following month.

DHS presented evidence that mother had been hospitalized three times in the past four-and-a-half years and that she had tested positive for methamphetamine each time. The court also heard testimony that, even though DHS referred mother to Addiction and Recovery Team (ART) services three times, mother did not engage in those services. Moreover, a DHS caseworker testified that, on the few occasions that mother agreed to meet with DHS employees in-person, she refused to provide UAs. DHS also offered several exhibits into evidence, including case notes and mother's mental health and substance abuse assessment.

After considering the testimony and exhibits, the juvenile court determined that DHS had made reasonable efforts to reunify the family and that mother had not made sufficient progress to ameliorate her pattern of substance abuse. Specifically, the court found that mother's substance abuse assessment "recommended significant therapy to address the [substance abuse disorder] issues, including random UAs." However, the court found that mother "missed many of her treatment sessions and did not provide any UAs

(most sessions were virtual)" and "decline[d] to provide a UA or a swab on the few occasions one was offered."

Further, the court found that,

"[mother] frequently demonstrated a failure to recognize how her [substance abuse disorder] impacts her ability to parent. For example, she is quoted as saying she will use if she wants because it is fun. She also continues to attempt to excuse her use saying that while she used the children were not around. Which, even if true, fails to recognize the impact her use has on [E]. [Mother] has failed to reengage with treatment after her counselor left CCS and has not made any significant progress in understanding the impact her [substance abuse disorder] has on her ability to parent."

Therefore, the court determined that E could not be safely returned to mother's care and changed E's permanency plan to guardianship. This appeal followed.

We begin with a brief overview of the relevant analytical framework. "Absent exceptions not applicable here, to change a child's permanency plan from reunification to another permanent plan, the juvenile court must determine that (1) DHS has made reasonable efforts to reunify the family; and (2) notwithstanding those efforts, parents have not made sufficient progress to permit reunification." *Dept. of Human Services v. L. M. K.*, 319 Or App 245, 252, 510 P3d 278 (2022); ORS 419B.476(2). As the proponent of the permanency plan change, DHS bore the burden of proving both elements by a preponderance of the evidence. *See Dept. of Human Services v. M. K.*, 285 Or App 448, 455, 396 P3d 294, *rev den*, 361 Or 885 (2017) (so explaining). Because mother does not dispute the juvenile court's determination that DHS made reasonable efforts to reunify the family, the sole issue before us is whether the juvenile court erred when it determined that mother's progress was insufficient to permit reunification.

"The determination of whether a parent has made sufficient progress is measured in the context of the factual bases for jurisdiction as set forth in the jurisdictional judgment." *Dept. of Human Services v. D. W. C.*, 258 Or App 163, 171, 308 P3d 316, *rev den*, 354 Or 490 (2013). "In determining whether the parent has made sufficient progress, the

juvenile court gives the highest priority to a child's health and welfare." *M. K.*, 285 Or App at 460.

We have explained that a juvenile court "must take into consideration whether a parent has attempted to make appropriate changes and whether he or she has ignored or refused to participate in plans suggested or required by the state." *D. W. C.*, 258 Or App at 171. "[A] parent's failure to complete treatment, *in and of itself*, does not establish that the deficit continues." *C. W.*, 312 Or App at 582 (emphasis added). Conversely, "a parent's mere participation in services * * * is not sufficient to establish adequate progress toward reunification." *Dept. of Human Services v. S. N.*, 250 Or App 708, 718, 282 P3d 901, *rev den*, 352 Or 564 (2012) (internal quotation marks omitted); *see also M. K.*, 285 Or App at 460 ("[R]egardless of mother's completion of and progress in the required programs, if mother was still engaging in behaviors that would be harmful to her children, the court could conclude that mother's progress was not sufficient for them to safely return home.").

On appeal, mother contends that the juvenile court erred when it determined that she had made insufficient progress toward ameliorating her pattern of substance abuse because DHS failed to present evidence that she had used substances since she was hospitalized in 2021. Mother argues that her "lack of engagement in court-ordered and department-requested services was not sufficient for the department to meet its burden" and that the evidence did, in fact, establish that she had ameliorated her substance abuse. Mother also takes the position that DHS could have conducted an investigation and gathered information from "individuals that were part of mother's community" to establish that she had used substances, and that its failure to do so resulted in an insufficient record to support the juvenile court's decision.[1] We are unpersuaded.

---

[1] Mother also argues that "to the extent the juvenile court relied on mother's estrangement from [E] in ruling to change her plan away from reunification, it erred." We decline to address that matter because no legal argument is sufficiently developed in mother's brief. *See Beall Transport Equipment Co. v. Southern Pacific,* 186 Or App 696, 700 n 2, 64 P3d 1193 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

To support her argument, mother relies on *C. W.*, 312 Or App at 581-83. In that case, we concluded that the mere fact that the parent was unwilling to engage in the same treatment program that she had already completed four times—despite her willingness to provide UAs—was insufficient to prove that the parent's progress toward ameliorating the effects of her substance abuse was inadequate. *Id.* at 578, 581-83. In doing so, we observed that the record demonstrated that the parent had made significant progress toward understanding and addressing her substance abuse problem and that she consistently engaged in family therapy to support the child. *Id.* at 579, 581. In addition, DHS had previously determined that the parent did not pose a safety threat to the child, even when the parent had relapsed, and DHS did not contradict evidence from the child's foster provider and therapist that the parent could support the child's needs. *Id.* at 582-83. Therefore, we concluded that the juvenile court erred when it changed the child's permanency plan. *Id.* at 583.

We conclude that *C. W.* is readily distinguishable from this case and that the juvenile court did not err when it determined that mother had made insufficient progress. Here, mother's mental health and substance abuse assessment recommended, among other things, that mother participate in weekly therapy and that she provide "random UAs." However, the record demonstrates that mother did not consistently participate in therapy, that she frequently cancelled or missed sessions, and that she discontinued therapy before her therapist moved. On the few occasions when mother met with DHS employees in-person, she refused to provide UAs. Further, the record contained specific evidence—including mother's failure to engage with multiple ART referrals, her quoted statement that she will use drugs if she wants because it is fun, and her testimony minimizing the effect of her drug use on her children—that supports a determination that, unlike the parent in *C. W.*, mother did not make sufficient progress toward understanding and addressing her substance abuse problem.

Finally, to the extent that mother argues that DHS needed to offer more concrete or direct evidence of

contemporaneous substance abuse, we reject that argument. When, as here, the basis for jurisdiction is a parent's pattern of substance abuse, we have never held that DHS must present direct evidence of contemporaneous substance abuse before the juvenile court can determine that the parent has made insufficient progress toward ameliorating the jurisdictional basis. In fact, the opposite is true. A juvenile court may draw reasonable inferences from the evidence to support its determination. *E.g.*, *Dept. of Human Services v. D. M.*, 310 Or App 171, 185, 483 P3d 1248 (2021); *M. K.*, 285 Or App at 461. Here, DHS presented evidence of mother's long-standing pattern of substance abuse, her failure to engage in treatment, her refusal to provide UAs, and her consistently evasive conduct. That evidence, coupled with the absence of any evidence demonstrating a substantial change in mother's behavior, permitted the juvenile court to reasonably infer that mother's pattern of substance abuse was unchanged.

In sum, we conclude that the record provides an adequate legal basis for the court's determination that mother did not make sufficient progress to ameliorate her pattern of substance abuse to allow E to return home safely as required by ORS 419B.476(2). The juvenile court did not err when it changed E's permanency plan from reunification to guardianship.

Affirmed.