Submitted February 25, reversed and remanded April 20, 2022

In the Matter of C. E. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. M. K.
and H. D. S.,
*Appellants.*

Washington County Circuit Court
18JU09865; A176306

510 P3d 278

Mother and father separately appeal a judgment changing the permanency plan for their child from reunification to guardianship. Both parents challenge the juvenile court's determinations that Department of Human Services (DHS) made reasonable efforts to reunify the family and that they did not make sufficient progress to allow reunification. *Held*: The Court of Appeals concluded that the record supported the juvenile court's determinations as to mother. However, the juvenile court erred in determining that DHS's efforts afforded father a reasonable opportunity to become a minimally adequate parent.

Reversed and remanded.

Kathleen J. Proctor, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant L. M. K.

Kristen G. Williams filed the brief for appellant H. D. S.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

In this juvenile dependency case, mother and father separately appeal a judgment of the juvenile court changing the permanency plan for their three-year-old child, C, from reunification to guardianship. The juvenile court determined that, although the Department of Human Services (DHS) had made reasonable efforts to reunify the family, parents' progress was insufficient to permit reunification. ORS 419B.476(2)(a). We conclude that the record supports the juvenile court's determinations as to mother. However, the juvenile court erred by determining that DHS's efforts afforded father a reasonable opportunity to become a minimally adequate parent. Accordingly, we reverse.

Neither party has requested *de novo* review, and this is not the type of "exceptional" case that warrants *de novo* review. *See* ORAP 5.40(8)(c) (the court will exercise discretion to try the cause anew on the record only in exceptional cases). We therefore are bound by the juvenile court's findings so long as there is any evidence in the record to support them. *Dept. of Human Services v. J. F. D.*, 255 Or App 742, 744, 298 P3d 653 (2013). Whether DHS made reasonable efforts and whether a parent's progress was sufficient for purposes of ORS 419B.476(2)(a) are legal questions that we review for legal error. *Dept. of Human Services v. V. A. R.*, 301 Or App 565, 567, 456 P3d 681 (2019) (stating standard of review of "reasonable efforts" determination); *Dept. of Human Services v. C. W.*, 312 Or App 572, 574, 493 P3d 74 (2021) (stating standard of review of "sufficient progress" determination). We state the facts consistently with that standard.

## I.   BACKGROUND

A.   *Jurisdiction Over C*

Mother and father's child, C, was born in November 2018. Although father was present at C's birth, he denied that he was the child's biological father. About a week after the child's birth, DHS removed C from mother's care based upon a variety of concerns, including mother's admitted marijuana use and her ability to safely parent. In February 2019, the juvenile court asserted jurisdiction over C as to

mother based on mother's amended admissions. Specifically, mother admitted that her "substance abuse impairs her judgment and interferes with her ability to safely parent." She also admitted that she "failed to protect the child from her unsafe partner," and that, "[w]hile in the care and custody of the mother, the child's sibling [M] did not receive adequate dental care resulting in extensive dental decay."[1]

In May 2019, despite his earlier denial, father suggested to a DHS caseworker that he was C's father. Father and mother married in August 2019. DHS filed an amended petition incorporating additional jurisdictional bases over C as to father. In October 2019, father admitted that (1) he was the biological father; (2) his mental health problems interfere with his ability to safely parent; (3) he does not understand the safety risks posed by mother and cannot protect C; (4) despite extensive prior services, he lacks an understanding of C's basic needs and needs assistance to learn parenting skills, particularly anger control and safe and appropriate disciplinary techniques, and (5) he has a prior involuntary termination and the concerns regarding mental health and parenting giving rise to that action have not been ameliorated.

The juvenile court subsequently entered a jurisdictional judgment over C as to father based on father's admissions. As part of the judgment, the court ordered DHS to assist mother and father "as detailed in the Action Agreement dated October 30, 2019." The Action Agreement required parents to (1) maintain adequate and appropriate housing with a clean space that is safe and appropriate for children; (2) regularly attend visitation; (3) participate in a DHS-approved parenting class (or other instruction modality such as one-on-one parenting instruction) and be able to demonstrate concepts learned in class; (4) participate in and graduate from an anger management/intervention program and demonstrate corresponding behavioral change; (5) participate in and graduate from a full fidelity Dialectical Behavioral Therapy (DBT) program via a DHS-approved

---

[1] Mother's five-year-old son, M, suffered extensive and painful dental decay that required numerous extractions and likely could have been prevented with "appropriate dental hygiene and routine maintenance." Father is not M's biological father.

provider and demonstrate corresponding behavioral change; (6) complete an updated psychological evaluation and follow through on all recommended services; (7) continue to participate in mental health services to support long-term mental health stability, including treatment for ADHD, assessment of safe individuals, mood stabilization, and anxiety management; and (8) work with the DHS caseworker.

B.   *Mother's Participation in Services*

DHS offered mother visitation with C after the child's removal. In January 2019, she missed three visits in a row. When a parent misses three consecutive visits, DHS puts the visits on hold so the parent can work with the caseworker to address any difficulties in making visits. Mother claimed that she had transportation barriers. However, after DHS offered her bus passes or to pick her up, mother continued missing visits with various excuses. She did not restart visits with C until July 2019, when she began attending joint visits with father. After that, she continued to miss her individual visits with C, and DHS again placed visits on hold in March 2020. Around that time, DHS suspended in-person visits due to the COVID-19 pandemic. After DHS restarted visits, mother requested to reinstate her individual visits in October 2020. DHS did so, but mother missed the first three visits, resulting in visits being suspended again. Her last individual visit with C was February 3, 2020.

In addition to visitation, DHS referred mother to a parent mentor in March 2019. Mother failed to respond to the mentor's attempts to contact her, and the referral was closed in May 2019. DHS referred her to another parent mentor in 2020, but mother closed services with her in April or March 2021 because she did not feel that the mentor could help her with anything at that time. DHS also attempted to refer mother for a drug and alcohol assessment and treatment. Mother missed four different appointments and eventually attended an assessment in April 2019. That assessment recommended that mother participate in level I treatment (about one group per week). However, except for attending a single appointment, mother did not participate in the recommended drug treatment services. Mother attended another substance abuse assessment in May 2021

but then failed to respond to the provider's attempts to follow up and start treatment services. Mother also failed to engage in other services provided by DHS, including family, nonoffending sex-abuse treatment; nonoffending parenting treatment; and a mental health assessment.

C. *Father's DHS History and Participation in Services*

Father has five children, including C, four of whom have been in DHS's care and within the jurisdiction of the juvenile court. Since removal of one of his children in 2009, father has participated in a variety of services to help him safely parent his children, including many rounds of anger management with different providers, 10 to 15 parenting classes, hands-on parenting training, parent-child interactive therapy, and therapeutic visits. He also participated in multiple psychological evaluations, psychosexual evaluations, mental health assessments, counseling, and DBT.

In April 2019, father began engaging in mental health counseling with LifeWorks Northwest as part of another child's case. After father's paternity was established, DHS started to offer him visitation with C. Father consistently attended his individual visits but tended to miss joint visits with mother. The DHS social worker who supervised father's visits noted that father had a hard time understanding C's cues and what the child wanted to do.

In December 2019, Dr. Sacks conducted a psychological evaluation of father. Sacks noted that, although father was able to describe concepts that he learned in his prior anger management and DBT classes, he was "quick to extend blame to others, minimizes his role in social difficulties[.]" Sacks added that father's "mental health conditions continue to make it difficult for him to place the needs of a child before his own." He did not recommend additional services.

DHS suspended father's in-person visitation in March 2020 due to COVID-19. By June 2020, father had completed an online parenting course and started engaging in an enhanced skills training group with Portland DBT. However, due to a long waiting list, father was not able to participate in individual DBT therapy until January 2021.

In the meantime, father continued to participate in mental health treatment at LifeWorks through December 2020.

After DHS resumed in-person visitation, it referred father to a one-on-one parenting skills training at Options in late October 2020. DHS requested a "very skilled" trainer from the service provider. The provider, however, assigned father to a newly hired trainer. Father's caseworker contacted Options and expressed concerns that the trainer may "not be in the best interest of this case," and she "really had a lot of reservations about that[,]" but father's services continued with the same trainer. Father had a few gaps in his attendance but completed all 20 hours of services by the end of April 2021.

In February 2021, Dr. Brewer conducted another psychological evaluation of father at father's attorney's request. Brewer noted that, although father had followed through on numerous services, he continued to struggle using what he had learned to parent, especially when under pressure.

D.  *C's Special Needs*

Since DHS removed him from mother's care, C has remained with M's paternal grandmother. C had developmental delays, including hypertonia, which is extreme stiffness in his arms and legs, requiring physical therapy and occupational therapy. He also participated in early intervention services and speech therapy to address his developmental delays in language and communication. A permanency evaluation conducted in March 2020 noted that C needed a highly skilled caregiver who can model appropriate coping skills and provide him a stable living environment.

E.  *The Permanency Hearing*

The juvenile court began a contested permanency hearing on March 4, 2020, four months after the court took jurisdiction over C as to father. The hearing took place over the course of nine days, concluding in May 2021. At the conclusion of the hearing, DHS argued that, despite the services provided to parents, they had not made sufficient progress

to permit reunification, and it asked the court to change the plan for the child to guardianship.

The juvenile court agreed. It concluded that DHS had made reasonable efforts to reunify C with parents, but that mother and father had not made sufficient progress to make it possible for the child to safely return home. As to mother, the court was concerned that mother's substance abuse impaired her judgment and interfered with her ability to safely parent. In addition, the court found that mother had largely failed to participate in services throughout the case, including missing most of her individual visits with C. The court further noted that mother was "not in touch with the reality of the evidence in this case" as at the hearing mother denied having any substance abuse problems or any flaws with her parenting.

As to father, the court noted that, despite father's participation in services, he continued to blame others for his issues and had not internalized the skills he needed to safely parent, especially considering C's special needs. The court added that father lacked understanding of the safety risks that mother posed to the child and his testimony demonstrated that he was protective of mother over the child.

The court determined that, if returned, C "will be subjected to neglect for appointments, just based upon how the parents have behaved thus far. And because they are a team, that is important in my considerations." Based on those findings, the court ordered guardianship as the permanency plan for C.

Both parents have appealed, raising three assignments of error. Parents contend that the juvenile court erred in (1) holding that the department made reasonable efforts toward reunification; (2) holding that parents made insufficient progress toward reunification; and (3) changing C's case plan from reunification to guardianship. As we explain below, we conclude that the juvenile court correctly concluded that DHS made reasonable efforts to reunify C with mother and mother's progress was insufficient. However, the juvenile court erred when it determined that DHS's efforts

afforded father a reasonable opportunity to become a minimally adequate parent.[2] Accordingly, we reverse.

## II. ANALYSIS

Absent exceptions not applicable here, to change a child's permanency plan from reunification to another permanent plan, the juvenile court must determine that (1) DHS has made reasonable efforts to reunify the family; and (2) notwithstanding those efforts, parents have not made sufficient progress to permit reunification. *V. A. R.*, 301 Or App at 567 (citing ORS 419B.476). "The particular issues of parental unfitness established in the jurisdictional judgment provide the framework for the court's analysis of each question—that is, both DHS's efforts and a parent's progress are evaluated by reference to the facts that formed the bases for juvenile court jurisdiction." *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012). DHS must make reunification efforts directed at *each* parent individually. *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017) (emphasis added).

"Reasonable efforts" are those efforts that "focus on ameliorating the adjudicated bases for jurisdiction, and that give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. W. M.*, 310 Or App 594, 598, 485 P3d 316 (2021) (internal quotation marks omitted). "It is always the burden of DHS to prove by a preponderance of the evidence that its efforts to assist a parent in ameliorating the jurisdictional basis were reasonable." *Dept. of Human Services v. D. M. R.*, 301 Or App 436, 443, 455 P3d 599 (2019). When DHS has failed to offer or provide a particular service to a parent, "we view the adequacy of DHS's efforts in light of the potential benefits that providing that service could have yielded." *Dept. of Human Services v. D. M. D.*, 301 Or App 148, 156, 454 P3d 838 (2019). The assessment of the reasonableness of DHS's efforts also has a temporal component: To qualify as reasonable, "the efforts

---

[2] In his second assignment of error, father contends that the juvenile court erred in determining that he had not made sufficient progress toward reunification. Because our resolution of father's first assignment of error is dispositive, we do not reach his second assignment of error.

must go on long enough to allow for a meaningful assessment of whether parents are making sufficient progress to permit reunification." *W. M.*, 310 Or App at 598-99. "Although we take into account DHS's efforts over the life of the dependency case, the focus is on the period of time leading up to the permanency hearing." *Id.* at 598. Ultimately, whether DHS's efforts afford a parent the requisite reasonable opportunity to address the jurisdictional bases turns on the particular circumstances of each case. *V. A. R.*, 301 Or App 567.

With respect to a juvenile court's "sufficient progress" determinations, the court "gives the highest priority to a child's health and welfare." *Dept. of Human Services v. M. K.*, 285 Or App 448, 460, 396 P3d 294, *rev den*, 361 Or 885 (2017). "Even if a parent has completed all services that have been required, evidence that a parent continues to engage in behavior that is harmful to a child supports a determination that the parent has not made sufficient progress to make it possible for the child to return home." *Dept. of Human Services v. G. N.*, 263 Or App 287, 297, 328 P3d 728, *rev den*, 356 Or 638 (2014).

With that analytical framework in mind, we turn to mother and father's claims on appeal. Mother challenges the juvenile court's determinations that DHS made reasonable efforts to reunify the family and that she did not make sufficient progress to allow C to safely return home. Specifically, she contends that the COVID-19 pandemic significantly curtailed DHS's ability to assist her in the ways that the psychological expert recommended, and therefore she was not provided a fair opportunity to ameliorate the adjudicated bases for jurisdiction. We are unpersuaded.

Since the child's removal in December 2018 and throughout the pandemic, DHS provided mother a number of services, including visitation, parent mentors, nonoffending parenting treatment, substance abuse assessments and treatment, and psychological evaluations. Yet mother never regularly attended those visits with C, either before or after the pandemic began. She participated in a psychological evaluation and two drug and alcohol assessments but failed to follow up on any of the assessments' recommendations.

She also did not engage in other services provided by DHS, including family, nonoffending sex abuse treatment; nonoffending parenting treatment; and a mental health assessment. *See Dept. of Human Services v. T. S.*, 267 Or App 301, 310, 340 P3d 142 (2014) (in assessing the reasonableness of DHS's efforts, we consider "whether a parent has attempted to make appropriate changes and whether he or she ignored or refused to participate in plans as required by DHS"). Further, the specific examples cited by the court—*e.g.*, mother denied having a substance abuse problem despite her prior admission to that allegation, and she testified that she saw nothing wrong with her or father's parenting—support the court's findings that mother had not made sufficient progress to safely parent C.

We thus conclude that the record supports the facts found by the juvenile court and provides an adequate legal basis for the court's legal determinations that DHS made reasonable efforts to reunify C with mother and that mother had not made sufficient progress to allow the child to return home safely as required by ORS 419B.476(2)(a).

We reach a different conclusion as to father. The record does not support the juvenile court's conclusion that DHS's efforts leading up to the permanency hearing gave father a reasonable opportunity to address the jurisdictional bases.[3] At the outset, it is important to note that this is not a case in which DHS asked the juvenile court to be relieved of the obligation to make reasonable reunification efforts. ORS 419B.340(5) allows the court to find that DHS is not required to make reasonable efforts to reunify the child with a parent if certain circumstances exist, including prior involuntary terminations. Rather than seeking to be relieved of providing services to father, DHS instead wanted to see father "just continue with services" and expected him to learn "through some form of therapy[.]"

---

[3] DHS argues that father did not preserve the specific argument that DHS failed to provide him services relating to his understanding of the safety risks mother posed to the child. However, upon reviewing the record, we conclude that father challenged the broader issue of DHS's lack of reasonable efforts in the juvenile court and preserved his ultimate argument that the juvenile court erred in changing C's permanency plan. Thus, we will proceed to consider father's argument as to the reasonableness of the services DHS provided to him. *See Dept. of Human Services v. C. S. C.*, 303 Or App 399, 408, 463 P3d 582 (2020).

Having not sought to be relieved of the obligation to provide services, it was thus incumbent upon DHS to provide services that could assist father in overcoming the deficits identified in the jurisdictional judgment. *W. M.*, 310 Or App at 598-600. DHS's efforts also had to extend long enough to allow for a meaningful assessment of whether that service (or the services) will permit a parent to become a minimally adequate parent. In particular, although we take into account its efforts over the life of the dependency case, the focus is on "a period before the hearing." *S. M. H.*, 283 Or App at 306; *Dept. of Human Services v. R. D.*, 257 Or App 427, 432-33, 307 P3d 487 (2013) (concluding that DHS's efforts were not reasonable where mother required sex offender treatment to address the basis for jurisdiction but 16 months had elapsed after the court took jurisdiction over the child and such treatment started only shortly before the permanency hearing); *V. A. R.*, 301 Or App at 570-71 (DHS's efforts were not reasonable where DHS was aware that mother required hands-on training to become minimally adequate parent, but it delayed in offering that training for more than 3 months, so that mother had only five training sessions before the permanency hearing.).

DHS did not afford father that adequate opportunity to demonstrate progress. As noted, the juvenile court ordered DHS to provide a number of services aimed at overcoming the parenting deficits that existed in prior cases, addressing father's ongoing mental health concerns, and addressing his failure to understand C's basic needs and to protect C from the safety risks that mother posed. Yet DHS moved to change C's plan from reunification to guardianship a mere four months after the juvenile court asserted jurisdiction over C as to father. In that time, several of the services that DHS identified as being necessary to offer father an opportunity to address his parenting deficits were unavailable.[4] And, over the course of the next 14 months

---

[4] Although we acknowledge that COVID-19 restrictions may have contributed to that delay, "the presence of the pandemic has nothing to do with the grounds for jurisdiction, and we see no legal basis for concluding that parents must, on their own and without the services that would be available in normal times, overcome the impediments to services that have been occasioned by this extraordinary, but temporary, worldwide pandemic." *W. M.*, 310 Or App at 601.

before the court ruled on the permanency plan change, the services provided by DHS continued to be insufficient.

The parenting classes at Options did not begin until nearly a year after the juvenile court took jurisdiction over C as to father, and, even then, the trainer that Options provided was not satisfactory to DHS. DHS referred father to a DBT course but, due to a waitlist, father could not begin that program until nearly a year after the permanency hearing began, and father did not complete the course until *after* the conclusion of the hearing.[5] And the record is devoid of evidence that DHS provided any services to father that would enable him to ameliorate the jurisdictional basis that he failed to understand and protect C from the safety risks posed by mother. In sum, taking into account DHS's efforts over the life of father's case, with a focus on its efforts leading up to the hearing, DHS failed to give father a reasonable opportunity to demonstrate that he could become a minimally adequate parent.

We appreciate that, given father's extensive history with DHS and the services that it offers, it may have been difficult to identify appropriate and reasonable services. That said, DHS determined that, rather than seeking to be relieved of providing services to father, it wanted him to engage in additional services. With that decision comes the concomitant obligation to make reasonable efforts in a timely fashion. DHS failed to do so, and the juvenile court erred in concluding otherwise.

Reversed and remanded.

---

[5] As part of another child's case, father was engaging in anger management, DBT, and counseling services with Good Samaritan Ministries. DHS did not approve that program for this case due to its concerns over Good Samaritan's lack of documentation. DHS requested father to complete DBT through Portland DBT.