736           October 30, 2024           No. 767

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

F. K.,
*Appellant.*

Douglas County Circuit Court
22JU05217; A183222

Ann Marie Simmons, Judge.

Argued and submitted July 2, 2024.

Sean Connor, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Mother appeals a judgment that changed the permanency plan for her child, A, from reunification to adoption. In two assignments of error, mother argues that the juvenile court erred when it determined that she had made insufficient progress to allow A to safely return home and when it changed A's permanency plan. Specifically, mother contends that the Department of Human Services (DHS) failed to prove that she had made insufficient progress toward ameliorating her substance abuse because it did not present evidence that she had used controlled substances in the seven months before the contested hearing. As we explained in *Dept. of Human Services v. N. A. S.*, 332 Or App 89, 96, 548 P3d 505, *adh'd to as modified on recons*, 334 Or App 358, ___ P3d ___ (2024), when the basis for jurisdiction is a parent's substance abuse, DHS is not required to "present direct evidence of contemporaneous substance abuse before the juvenile court can determine that the parent has made insufficient progress toward ameliorating the jurisdictional basis." Because the record in this case permitted the juvenile court to reasonably infer that mother's substance abuse continued to interfere with her ability to safely parent A, we conclude that the court did not err. Accordingly, we affirm.

Mother does not request *de novo* review and we decline to exercise our discretion to do so. *See* ORAP 5.480(8)(c) (providing that we exercise our discretion "only in exceptional cases"). Accordingly, we review the juvenile court's determination that a parent has made insufficient progress to allow the child to return safely home for errors of law. *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). "[I]n reviewing a juvenile court's determination to change a permanency plan because a parent has not made 'sufficient progress,'" we "are bound by the juvenile court's factual findings as to what efforts DHS has made and what actions the parent has taken, so long as there is any evidence in the record to support them." *Id.*

In October 2022, A was born with drugs in his system. In December 2022, mother admitted that her "substance abuse interferes with her ability to safely parent" A and the juvenile court found A within its jurisdiction.

In the next three months, mother started inpatient treatment twice, but left after six days each time. Although DHS referred mother to another inpatient treatment facility, that facility would not admit her because of her volatile conduct toward staff.

Mother tested positive for amphetamines in March 2023. In May 2023, mother began outpatient treatment and, on the day of her initial assessment, tested positive for amphetamines. Although mother attended "one of [her] three assigned groups," the provider closed her case in July 2023 because she did not engage in services. After DHS helped mother schedule another appointment with that provider, mother revoked the authorization that allowed the provider to release information to DHS.

In November 2023, DHS asked the court to change A's permanency plan to adoption. Later that month, mother's caseworker told her that DHS wanted her to complete an outpatient treatment assessment. Mother said that she would do so.

In December 2023, the juvenile court held a contested hearing during which the caseworker and a therapist testified about the foregoing facts. The caseworker testified that she began working with mother in September 2023 and that she was focused on building "rapport and trust" with mother. Although the caseworker did not know if mother had completed the outpatient treatment assessment, the caseworker testified that the provider had closed mother's case. The caseworker further testified that, in the past three months, mother had explained that

> "she kind of uses [drugs] to numb that pain. But then she also says that she could stop her use at any time. That if her children were returned to her she could just stop. That the reason she uses is because of the difficulty of [DHS] being involved and her not having her children."

The caseworker also stated that DHS did not ask mother to provide urinalysis tests after March 2023 but that it tried to engage her with treatment providers that would administer the tests. In addition, the therapist testified that, given mother's "long history of addiction with some clean time"

and her "history of failed attempts at treatment," the therapist did not think that mother could address her substance abuse without treatment or intervention or that A could return to mother's care safely within a year.

The juvenile court determined that DHS had made reasonable efforts and that mother's progress was insufficient to allow A to return home safely. The court explained:

> "[T]his is a case where actions speak louder than words. Mother has been promising to do every type of treatment under the sun *** [a]nd she hasn't done it. She says she'll do residential treatment and she didn't do residential treatment. She says she'll do outpatient treatment and she doesn't do outpatient treatment."

After observing that "[w]e are 14 months into the case now," the court found that mother "had numerous opportunities" to engage in treatment and that she could have "taken [DHS] up on their offer in November and been in for an assessment and started treatment by now" but failed to do so. After emphasizing A's age and that "he deserves to have the type of permanency that all children have, including the need to preserve a sibling attachment, which is in the home that he's in right now," the court changed A's permanency plan to adoption. This appeal followed.

In a combined argument, mother contends that the juvenile court erred when it determined that her progress was insufficient and when it changed A's permanency plan because DHS "failed to prove that mother had used drugs in the seven months before the permanency hearing, much less that any continued use would prevent [A's] safe return home." We are unpersuaded by mother's argument.

"Absent exceptions not applicable here, to change a child's permanency plan from reunification to another permanent plan, the juvenile court must determine that (1) DHS has made reasonable efforts to reunify the family; and (2) notwithstanding those efforts, parents have not made sufficient progress to permit reunification."[1] *Dept. of Human Services v. L. M. K.*, 319 Or App 245, 252, 510 P3d 278 (2022);

---

[1] Mother does not challenge the juvenile court's determination that DHS made reasonable efforts.

ORS 419B.476(2). "The determination of whether a parent has made sufficient progress is measured in the context of the factual bases for jurisdiction as set forth in the jurisdictional judgment." *N. A. S.*, 332 Or App at 93 (internal quotation marks omitted). As relevant here, "we have never held that DHS must present direct evidence of contemporaneous substance abuse before the juvenile court can determine that the parent has made insufficient progress toward ameliorating" the parent's "pattern of substance abuse." *Id.* at 96. "In fact, the opposite is true. A juvenile court may draw reasonable inferences from the evidence to support its determination." *Id.*; *Y. B.*, 372 Or 133 at 151 (explaining that we review a juvenile court's sufficient progress determination "by examining whether the facts explicitly and implicitly found by the juvenile court, together *with all inferences reasonably drawn from those facts*, were legally sufficient to support the juvenile court's determination" (emphasis added)); *see also Dept. of Human Services v. D. W. C.*, 258 Or App 163, 171, 308 P3d 316, *rev den*, 354 Or 490 (2013) ("The court must take into consideration whether a parent has attempted to make appropriate changes and whether he or she has ignored or refused to participate in plans suggested or required by the state.").

Here, the record demonstrates that mother began using methamphetamine more than 20 years ago and that, at times, she had used it daily. The therapist testified that mother had "some clean time" over those 20 years, but the caseworker also testified that mother admitted to using drugs to numb the pain of not having her children. Although DHS repeatedly referred mother to substance abuse treatment, she chose to leave inpatient treatment twice and her volatile conduct prevented her admission to another program. That evidence permitted the juvenile court to reasonably infer that mother's substance abuse continued to interfere with her ability to safety parent A. *See N. A. S.*, 334 Or App at 359 (concluding that the juvenile court could "reasonably infer that [the parent's] pattern of substance abuse was unchanged" when DHS's "specific evidence, along with the entirety of the record * * * demonstrated no meaningful change in [the parent's] behavior").

In addition to the foregoing evidence, the caseworker testified that mother had stated that she could stop using drugs if her children were returned to her care. However, the therapist testified that—given mother's history of substance abuse and particular circumstances—she believed that mother needed treatment or intervention to ameliorate her substance abuse. That additional testimony provides ample support for the juvenile court's determination. In sum, we conclude that the juvenile court did not err when it determined that mother's progress was insufficient to allow A to return home safely and that the record supports its determination to change A's permanency plan from reunification to adoption.

Affirmed.