474 April 2, 2025 No. 294

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of R. M. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. H. R.,
*Appellant.*

Jackson County Circuit Court
22JU06012; A184743

David G. Hoppe, Judge.

Submitted February 4, 2025.

Kathleen Megill Strek filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In this juvenile dependency proceeding, father appeals a judgment changing the permanency plan for his 17-month-old child, R, from reunification to adoption. That change was requested by R, but R does not appear on appeal, leaving the Department of Human Services (DHS) to defend a change of plan that it did not itself request. Father raises three assignments of error, challenging the juvenile court's (1) determination that DHS made reasonable efforts to reunify father with R, (2) determination that father made insufficient progress to allow reunification, and (3) ultimate decision to change R's plan to adoption. For the reasons explained below, we reverse and remand.

To obtain a change of plan from reunification to adoption, R, as the proponent of the change, had the burden to prove by a preponderance of the evidence that DHS had made reasonable efforts to reunify R with father, and, notwithstanding those efforts, father had not made sufficient progress to permit reunification. *Dept. of Human Services v. L. M. K.*, 319 Or App 245, 252, 510 P3d 278 (2022); *Dept. of Human Services v. T. L.*, 287 Or App 753, 763, 403 P3d 488 (2017). We review the juvenile court's determinations on both issues for legal error. *Dept. of Human Services v. C. H.*, 373 Or 26, 48-49, 559 P3d 395 (2024). In doing so, we are "bound by the juvenile court's factual findings as to what efforts DHS has made and what actions the parent has taken, so long as there is any evidence in the record to support them, and we assume that the juvenile court found all facts necessary to its ruling, even if it did not do so explicitly." *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). "[B]oth DHS's efforts and a parent's progress are evaluated by reference to the facts that formed the bases for juvenile court jurisdiction." *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012).

R was born in December 2022. The juvenile court asserted dependency jurisdiction over him in February 2023. In April 2024, the court held a permanency hearing for R. At that time, there were two jurisdictional bases relating to father: (1) father had medical issues that, if left untreated and/or unameliorated by treatment, would

interfere with his ability to protect and safely parent R, and (2) father failed to protect R from mother's substance abuse. During the hearing, R (through counsel) asked the court to change his plan to adoption. DHS took "no position" on R's motion, because "the agency feels that it has more that it needs to do in working with [father] before it can move for a change of plan * * *." The evidence presented at the hearing mostly related to father's attendance record for supervised visits and his ability to demonstrate parenting skills during the visits. Based on the evidence at the hearing, the juvenile court ruled that DHS had made reasonable efforts to reunify the family and that, notwithstanding those efforts, father had made insufficient progress to permit reunification. It changed R's permanency plan to adoption.

Father did not preserve any claim of error as to the juvenile court's reasonable efforts determination, and we are disinclined to grant his request for discretionary plain-error review[1] of that determination when, as discussed below, we are reversing the judgment in any event based on a preserved claim of error. Father has not developed any argument as to why we should exercise discretion to correct the alleged plain error in the reasonable efforts determination *even if* we reverse the judgment on other grounds. We therefore express no opinion on the reasonable efforts determination, and nothing in this opinion should be understood to affect the future reevaluation of whether DHS provided reasonable efforts during the period at issue.

Turning to the insufficient progress determination, father argues that the evidence was legally insufficient to support that determination. He emphasizes that the juvenile court was required to decide the change-of-plan motion based on the existing jurisdictional bases. *See T. L.*, 287 Or App at 764 ("[I]f an interested party seeks to change a child's permanency plan based on a fact other than one explicitly stated or fairly implied by the jurisdictional judgment, the

---

[1] "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to consider a "plain" error. ORAP 5.45(1); *see State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (stating requirements for an error to qualify as "plain"). Even if an error is "plain," it is a matter of discretion whether to correct it. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

party must petition for and obtain an amended jurisdictional judgment."). In response, DHS argues that father's claim of error is unpreserved and that the court did not commit "plain" error in determining on this record that father had made insufficient progress.

We conclude that father adequately preserved this claim of error. R's closing arguments incorrectly framed the issue before the court as being "not about" father's medical situation but instead "about [his] ability to follow through to the visitation" and "[t]o know [R's] needs" and "the fact that so much time is passing." R argued that neither parent had the necessary "parenting skills" to parent R and that there was "no plan, really, that's being presented of what's going to be different in the future."

In response, parents emphasized the applicable legal standards and the minimal evidence presented relevant to the actual jurisdictional bases. Everyone seems to have understood that father's medical issues were no longer a barrier to safely parenting R, so parents focused on father's ability to protect R from mother's substance abuse. Mother emphasized that the jurisdictional basis as to father was "that he failed to protect [R from] mother's substance abuse"—"not chaotic lifestyle," "not failure to meet basic needs," and "not parental incapabilities." She pointed to the little evidence that had been presented on the actual jurisdictional basis as favoring father. Father echoed that argument. He reiterated that "the basis of jurisdiction is failure to protect from mother's substance abuse"; stated that the court should "focus" on the sufficient progress issue; and asserted that there was "no evidence that these two are even having contact anymore."

"Preservation rules are pragmatic as well as prudential" and are meant to ensure that trial courts are given "the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). Here, the purposes of preservation were served. Although parents' arguments could have been more pointed, they adequately alerted the court and other parties that

both parents viewed the only evidence relevant to the actual jurisdictional bases as favoring father, such that it would not support an insufficient-progress determination as to father. We therefore treat the second assignment of error as preserved.

Proceeding to the merits, we agree with father that the evidence admitted at the April 2024 permanency hearing was legally insufficient to support an insufficient-progress determination as to him. Regarding the first jurisdictional basis—that father had medical issues that, if left untreated and/or unameliorated by treatment, would interfere with his ability to protect and safely parent R—father's leg was amputated for diabetes-related reasons, and he later suffered a stroke that rendered him significantly disabled for a period of time. However, there was no evidence that father's medical issues persisted at the time of the hearing in a way that would affect his ability to protect and safely parent R. To the contrary, the only evidence was that father's health had "significantly improved" with time and treatment to the point that he was "back to near normal function at this point with very little in the way of residual deficits."

As for the second jurisdictional basis—that father failed to protect R from mother's substance abuse—there was some evidence that father may have violated a no-contact order approximately five months before the permanency hearing. A no-contact order prohibiting contact with mother was entered in another case in October 2023, and, shortly afterwards, a DHS employee encountered mother at father's home, while father was not present. Mother was wearing a robe and told a DHS employee that she had been sleeping, arguably allowing an inference of some ongoing contact between parents.[2] But even assuming that ongoing contact alone would evince insufficient progress with respect to father protecting R from mother's substance abuse, there was no evidence of any more recent contact between parents in the five months before the permanency hearing or of any ongoing romantic relationship between them.

_____

[2] The only other evidence potentially relevant to ongoing contact was evidence that mother and father shared a phone number at some unknown point in time and that mother told DHS on an unknown date in October 2023 that father's phone was not working.

Having chosen to move for a change of plan, it was R's burden to produce sufficient evidence to support a change of plan. R failed to do so, specifically as to insufficient progress by father. Accordingly, we conclude that the juvenile court erred in changing R's permanency plan to adoption, and we reverse the permanency judgment.

Reversed and remanded.