198 April 1, 2026 No. 256

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. F. R.,
*Appellant.*

Coos County Circuit Court
24JU02399; A188427 (Control)

In the Matter of J. R., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. F. R.,
*Appellant.*

Coos County Circuit Court
24JU02400; A188428

In the Matter of O. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. F. R.,
*Appellant.*

Coos County Circuit Court
24JU02402; A188429

Matthew P. Muenchrath, Judge.

Submitted February 18, 2026.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Tiffany Keast, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Interim Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this consolidated juvenile dependency case, father appeals from permanency judgments changing the permanency plans for his three children from reunification to adoption. Father contends that the juvenile court erred in ruling that the Oregon Department of Human Services (ODHS) made reasonable efforts to reunify father with his children and in changing the permanency plans from reunification to adoption. For the reasons explained below, we affirm.

Father has not requested that we review *de novo*, and we do not exercise our discretion to engage in such review in this case.[1] Therefore, we are bound by the juvenile court's findings of historical fact—including what reunification efforts ODHS made—if there is any evidence in the record to support them. *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). We review the juvenile court's determinations that ODHS's efforts have been reasonable for errors of law. *Dept. of Human Services v. T. R. P.*, 344 Or App 375, 377, 580 P3d 365 (2025).

Although the parties are familiar with the factual and procedural history, we provide a short recitation of the background details for context in this nonprecedential memorandum opinion. ODHS first became involved with the family when father and the biological mother of one of the children were incarcerated based on charges related to sexual abuse against another child.[2] The sole basis for jurisdiction as to father is that "father is incarcerated due to alleged criminal activities and he is unable to be a custodial resource, which places the child[ren] at risk of harm."

Hacker, the ODHS caseworker assigned to the case, testified at the permanency hearing. She explained that

_____

[1] *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (providing for the exercise of that discretion only in "exceptional cases"); ORAP 5.40(8)(d) (identifying nonexclusive considerations that may be relevant to our decision whether to exercise *de novo* review).

[2] The three children have the same biological father and different biological mothers—two of the children have the same biological mother and one child has a different biological mother. Neither mother is a party to this appeal.

father was initially held at the Coos County Jail but then was moved to a federal facility in Sheridan because he was not following the jail's rules.[3] Hacker explained that father's move to Sheridan made providing services more difficult. For instance, Hacker, who typically works Monday through Friday, was initially driving the children out to Sheridan to visit father monthly on Saturdays until the facility changed its policy to allow visits only on specified Saturdays. Eventually, the facility stopped the visits completely because father was no longer allowed to have in-person contact with any children due to the charges against him. During father's incarceration, Hacker facilitated family decision meetings approximately every month, scheduled weekly phone calls between the children and father, and helped father send letters to the children. Hacker had phone calls and exchanged emails with counselors at Sheridan who told her that they do not provide services to anyone at the facility. At the permanency hearing, Hacker further explained that the children were placed with resource parents that father requested. She elaborated that the parents had suggested the current resource parents and that father has a family-like relationship with them, including calling them "mom and dad." ODHS met with the suggested resource parents and decided that they would be a good fit, and now the resource parents want to adopt all three children.

The juvenile court ultimately found that father did not make sufficient progress toward reunification and that ODHS made reasonable efforts to facilitate reunification. In its oral ruling, the juvenile court noted that it considered the "egregious" charges against father and the potential Measure 11 sentences that he was facing. The court opined that ODHS made efforts to provide services to father even after it became more difficult when he moved to Sheridan, emphasizing that father's own behavior was the reason that he was moved to the Sheridan facility. In the written dependency judgments, the court made additional findings about ODHS's efforts:

---

[3] At the time of the hearing, father was incarcerated pending trial and had not been convicted of any crimes. Although ODHS asks us to take judicial notice that father has since been convicted, we decline to do so because it is not necessary for our decision. Accordingly, we review the evidence that was before the juvenile court when it made its decision.

"Contacting prison counselors to determine what services are available, continuous case planning activities and communication with parents, regular family engagement and decision meetings, regular phone and email contact with incarcerated parents, visitation and phone contact between children and parents provided to the extent allowed by facilities where parents are incarcerated."[4]

The juvenile court changed the permanency plans from reunification to adoption. This timely appeal follows.

On appeal, father argues in six assignments of error that the juvenile court erred in ruling that ODHS's efforts were reasonable and in changing the permanency plans from reunification to adoption. Specifically, father contends that, after ODHS learned that Sheridan would not provide any services, it failed to meet its obligation to provide father with services beyond an attempt to maintain contact between father and the children. Father maintains that those efforts were insufficient because the sole basis for jurisdiction is father's incarceration. Although the parties dispute preservation, we conclude that, even assuming that father's argument is preserved for appellate review, the juvenile court did not err in concluding that ODHS made reasonable efforts to reunify father with his children.

Except where the juvenile court has relieved ODHS of its responsibility to provide reasonable efforts, which is not applicable here, the court is authorized to change a child's permanency plan from reunification to adoption if the proponent of the change of plan—typically and in this case ODHS—proves that ODHS's efforts to reunify the parent and child have been reasonable and that, despite those reasonable efforts, the parent's progress toward reunification has been insufficient.[5] ORS 419B.476(2)(a); *Dept. of*

_____

[4] Father points out in his opening brief that, although there is a box checked in the judgments suggesting that a "[d]escription of reasonable efforts is attached as Exhibit 1," there is no such attachment to the judgments. After reviewing the record, we also cannot find an "exhibit 1" describing ODHS's reasonable efforts. Thus, we disregard that part of the judgments and review the juvenile court's oral and written findings described above.

[5] Under ORS 419B.340(5), the juvenile court may relieve ODHS of its obligation to make reunification efforts in cases in which there are "aggravated circumstances," the parent has committed certain crimes, or the parent's rights to

*Human Services v. L. M. K.*, 319 Or App 245, 252, 510 P3d 278 (2022). ODHS's reunification efforts are "reasonable" when they "focus on ameliorating the adjudicated bases for jurisdiction" and "give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. L. L. S.*, 290 Or App 132, 138, 413 P3d 1005 (2018) (internal quotation marks omitted). A parent's incarceration alone does not excuse ODHS from making reasonable efforts toward reunification. *See State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 506, 130 P3d 801 (2006).

Here, there is sufficient evidence to conclude that ODHS made reasonable efforts. Hacker took steps to keep father in a parental role despite his incarceration by facilitating phone calls, family decision meetings, and in-person visits for as long as the facility allowed. Although those efforts could not directly ameliorate father's incarceration or lessen his sentence, they were all efforts to involve father in the children's lives and to help him make decisions about their care. *See L. L. S.*, 290 Or App at 138 (explaining that reunification means not only physical reunification but also "the restoration of the parent's right to make the decisions about the child's care, custody, and control without state supervision, even if the child will not be returned to the parent's physical custody because of other impediments, such as incarceration"); *Dept. of Human Services v. R. C.*, 320 Or App 762, 769-70, 514 P3d 538, *rev den*, 370 Or 404 (2022) (concluding that ODHS's efforts were reasonable when one of the bases for jurisdiction was the father's incarceration and citing multiple factors, including that ODHS "worked with father on his suggestions for family members who could be possible prerelease placements"). Indeed, father played a significant role in making the decision for the children to be placed with the current resource parents. Moreover, the juvenile court permissibly considered that father's charges were for serious crimes and had the potential for an extended

---

another child have been terminated. Father contends that, because ODHS has not been granted relief under ORS 419B.340(5), the perceived futility of efforts given father's placement at Sheridan does not render otherwise deficient efforts reasonable. We need not address that argument, however, because we conclude that there was sufficient evidence to support the court's determination that ODHS made reasonable efforts under the totality of the circumstances.

period of incarceration. *See Dept. of Human Services v. S. M. H.*, 283 Or App 295, 306, 388 P3d 1204 (2017) (explaining that when a parent is incarcerated, the juvenile court may consider the "length and circumstances of a parent's incarceration" and "evidence specifically tied to [a parent's] willingness and ability to participate in services" as factors to determine whether ODHS's efforts were reasonable) (internal citations omitted; brackets in *S. M. H.*)). Therefore, given the totality of the circumstances, we conclude that the juvenile court did not err in determining that ODHS made reasonable efforts to reunify father with his children and, thus, did not err in changing the permanency plans from reunification to adoption.

Affirmed.